## Smith *versus* Milligan.

*Relationship, effect of on implied Assumpsit.—Presumption of Promise to pay for personal Services, what will rebut.*

1. Where services are rendered by one to another, the law presumes a promise on the part of him who receives them to pay what they are reasonably worth: but this implication is rebutted by any proof that shows an intention to give and receive without compensation.

2. Relationship either by consanguinity or affinity is a fact which tends to rebut the presumption which the law raises that a promise to pay is intended where personal services are rendered; but alone, it does not overcome that presumption except in the case of parent and child: in all other cases there must be evidence beyond the relationship that the creation of no debt was intended.

3. Whether the presumption is overcome by such evidence, is a question of fact to be submitted to the jury.

4. A father-in-law who had been boarding with his tenant and paying therefor, became dissatisfied and went to live with his son-in-law, saying he would board nowhere else, and that he had enough to pay for his boarding. After his death, in an action by the son-in-law against his administrator to recover for board, attendance, &c., the court instructed the jury that the plaintiff could not recover without clear and satisfactory proof of an express contract between the plaintiff and the defendant intestate, and directed a verdict for the defendant. *Held*, that such instruction and direction was error.

ERROR to the Common Pleas of *Clinton county*.

This was an action of *assumpsit* brought by Jacob Smith against J. C. Milligan, administrator, &c., of Hugh Milligan, deceased, to recover compensation for boarding and attendance on deceased, from April 1852 to August 1853. Hugh Milligan, who was a man of considerable means, was the father-in-law of Jacob Smith. During most of the time while he lived with Jacob Smith he was insane, very feeble, and the source of great trouble, care, and annoyance to those who had the charge of him. Before going to board with Smith, he had been living with a Mr. Wadsworth, a tenant on his farm, paying him $1 per week for board: but owing to some misunderstanding between him and Mrs. Wadsworth, he refused to board there any longer, saying, according to the testimony of one of the witnesses, that he had money enough to pay for his boarding, and that he would board nowhere else but at Smith's. Soon after he went to Smith's, he became incapable of making any contract for himself, or of transacting any business, and remained so until his death.

The court below charged the jury as follows :—

"The plaintiff cannot recover in this action without clear, satisfactory proof of an express contract between the plaintiff and defendant's testators. The court being of the opinion that no such proof has been offered as would justify a recovery, we instruct you that your duty will be performed by rendering a verdict for the defendant."

Which was assigned here for error on writ sued out by the plaintiff.

*John H. Orvis* and *H. N. McAllister*, for plaintiff, contended, that the case of Lynn *v.* Lynn, 5 Casey 369, and the other cases cited in Hertzog *v.* Hertzog, 5 Casey 465, had carried the doctrines which they sustained, as far as public policy and the rights of individuals would permit it to go, and that to apply that doctrine to a case like the present, would be improper.

*Mayer* and *Ball*, for defendant, argued, that there was nothing in this case to distinguish it from other cases decided in Pennsylvania, in which the principle is too firmly established to be controverted, that where services are rendered by one person to another standing in the relation shown to have existed between the plaintiff and defendant, there can be no recovery without proof of an express contract: citing Walker's Estate, 3 Rawle 243; Candor's Appeal, 5 W. & S. 513; Defrance *v.* Austin, 9 Barr 309; Little *v.* Dawson, 4 Dall. 100; Swires *v.* Parsons, 5 W. & S. 357; Lantz *v.* Fry, 2 Harris 20; Lynn *v.* Lynn, 5 Casey 369; and Hertzog *v.* Hertzog, 5 Id. 465.

The opinion of the court was delivered, June 26th 1862, by

STRONG, J.—Generally, when services have been rendered by one person to another, the law presumes a promise, on the part of him who has received them, to pay what the services were reasonably worth. Such an engagement is accordant not only with reason and justice, but with the common usages of society, and hence a contract to pay is implied. This implication, however, is rebutted by any proof that shows an intention to give and receive without compensation. The question always is, was payment contemplated by the parties ?—Did they deal with each other as creditor and debtor ? In the absence of any direct proof upon this subject, resort must be had to common usage and understanding. Ordinarily, children do not expect to be paid for acts of kindness extended to parents. If a father come to the house of his son, and makes his abode there, it is not often that either the father or the son regards the other as a stranger, or that it is intended by the son to demand payment for the attention bestowed and the services rendered. Something is allowed

to filial affection. Hence, it has been thought rational to hold that personal services rendered by a child to a parent, are attended by no presumption that a promise was made to compensate in money. For the boarding and necessaries furnished to a parent, the law implies no promise to pay. But this is an exceptional case. It springs from the intimate relationship of the parties: Lynn v. Lynn, 5 Casey 369. In that case it was ruled that nothing less than an express promise would enable a child to recover from a parent payment for boarding and necessaries furnished. Nothing less would suffice to remove the presumption that affection rather than interest had prompted the bestowal of filial attention and services. The relationship of a father-in-law to his son-in-law is not so intimate. Our observation of common usage does not convince us that fathers-in-law permanently board with sons-in-law without any understanding that compensation shall be made. The case, therefore, is not within the exception— it comes under the general rule. Undoubtedly, relationship, either by consanguinity or affinity, is a fact which tends to rebut the presumption which the law raises, that a promise to pay is intended when personal services are rendered. But, alone, it does not overcome that presumption except in the case of parent and child. In all other cases there must be evidence beyond the relationship that the creation of no debt was intended. If there be such evidence, it must be submitted to the jury, and it will be for them to find whether the presumption is overcome.

In the case presented by this record, there was nothing but relationship to negative the implication of a contract, and there was considerable to strengthen it. Before Milligan went to the plaintiff's to board, he had been paying for his board. He was dissatisfied, not because he was required to pay, but on account of alleged ill-treatment. He said he would not board at any place but the plaintiff's—that he had enough to pay for his boarding. The tendency of this is to show that gratuitous service was not expected.

We are of opinion, therefore, that the court below erred in instructing the jury that the plaintiff could not recover, without clear, satisfactory proof of an express contract between the plaintiff and the defendant's intestate. The jury should not have been directed to return a verdict for the defendant.

Judgment reversed, and a *venire de novo* awarded.