## APPEAL OF EMILY C. RANNINGER.

FROM THE DECREE OF THE ORPHANS' COURT OF LANCASTER COUNTY.

Argued May 18, 1887—Decided February 13, 1888.

A testator bequeathed a legacy to his wife's niece, who at his request quitted a business of her own to render personal services in his home. In the will she was described to be " at present employed as my housekeeper." *Held*, under the facts found, that the implication of a contract to pay was not defeated by the marriage relationship, nor by the fact

that there was no payment during six years of the service, nor claim made therefor before distribution of the estate. McConnell's App., 97 Pa. 31, distinguished.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 52 July Term 1887, Sup. Ct.

The accounts of Henry M. Shreiner, executor of the will of Philip Christian Ranninger, deceased, showed a balance for distribution of $13,026.87. The will directed the payment of the testator's debts and funeral expenses, and, so far as material to this case, provided:

Item. I give and bequeath to Sophia Sieber, niece of my deceased wife, and at present employed as my housekeeper, the sum of three hundred dollars ($300).

Item. I give and bequeath to my son Charles Ph. Ranninger, the sum of three hundred dollars ($300).

Item. I give and bequeath to my grand-daughter, Minerva Ranninger, the sum of three hundred dollars ($300), to be paid to her when she becomes of age.

Item. I give and bequeath to Sophia Sieber, aforesaid, such furniture as she may select out of my household goods, not to exceed two hundred dollars ($200).

After further provisions, which were for charitable uses and rendered nugatory by the testator's death within 30 days after the date of the will, the residuum of the estate was devised and bequeathed to his executor, in trust to invest the one half of it and pay over the interest thereon annually to said Sophia Sieber, during the term of her natural life, and over at her death; the other half also to be invested, and the interest to be paid annually to testator's son, Charles Philip Ranninger, during his life, and over at his death.

Before Mr. J. W. F. Swift, appointed an auditor to ascertain claims and report distribution of the estate, Sophia Sieber, in addition to the benefits provided for her under said will, made a claim for compensation for services as the nurse and housekeeper of the decedent for the six years preceding his death. The auditor found the facts, sufficiently stated in the opinion of this court, and awarded upon the claim of Sophia Sieber the

sum of $5 per week for the period of six years, in addition to the provisions made for her in said will. Exceptions were filed by Mrs. Emily L. Ranninger, widow and administratrix of Charles Philip Ranninger, who had died a few days after the testator.

The court, LIVINGSTON, P. J., on argument, overruled the exceptions and confirmed the auditor's report, whereupon the exceptant took this appeal, assigning the decree of confirmation as error.

*Mr. Eugene G. Smith* (with him *Mr. W. H. Livingood*), for the appellant.

There is not a scintilla of proof to show an express contract. There was no provision, no understanding, no contract, no arrangement, of sufficient certainty and precision to be enforced. All the circumstances repel the idea of a contract relation. The relations of the parties were such as to negative the idea that the services were rendered in the expectation of payment, and they cannot be made the basis of a legal claim: Hartman's App., 3 Gr. 271; Swires v. Parsons, 5 W. & S. 358; Neal v. Gilmore, 79 Pa. 427; Lantz v. Frey, 19 Pa. 366; Walls's App., 111 Pa. 460; Houck v. Houck, 99 Pa. 552; McConnell's App., 97 Pa. 31; Horton's App., 94 Pa. 62; Hipwell's Est., 49 Pa., 126; Graham v. Graham, 34 Pa. 480; Bash v. Bash, 9 Pa. 262.

*Mr. A. O. Newpher*, for the appellee.

By the services rendered a contract was implied, to rebut which there was no relation of parent and child shown to have been created. A contract relation was indicated by the testator's acts in the presence of witnesses and by his description of the claimant in his will as "at present employed as my housekeeper:" McCarty's Est., 9 Phila. 318. The whole contention below was solely upon a question of fact, and the auditor's report having been confirmed, it will not be set aside except for plain mistake; Dellinger's App., 71 Pa. 425.

The fact that the claimant was a niece by marriage of the decedent does not raise a presumption that her services were gratuitous: Gordner v. Heffley, 49 Pa. 163; nor is it to be presumed that the legacy was intended to be in discharge of her claim: Horner v. McGaughy, 62 Pa. 189; Thompson v. Stevens, 71 Pa. 161.

OPINION, MR. JUSTICE CLARK:

In the distribution of the estate of Philip Christian Ranninger, deceased, Sophia Sieber made a claim of $3,000 and upwards, for compensation as nurse and housekeeper for six years previous to his death. The auditor found that the claimant did, during the period stated, actually serve Ranninger in this capacity, under employment as a housekeeper, and allowed her $1,560 as a compensation therefor, and this finding and allowance was approved by the court. Unless, therefore, the error is flagrant the decree will not be disturbed.

Philip Christian Ranninger was twice married. During the life of his first wife, Sophia Sieber in partnership with her aunt, who afterwards became the second wife, carried on the dressmaking business in the city of Lancaster. This partnership continued for some eighteen years, which was several years after Ranninger's second marriage. The health of her aunt and also of Mr. Ranninger, the husband, at the end of this period, became so bad that the business was abandoned; and after that Sophia devoted herself exclusively to the care of both, until her aunt, the second Mrs. Ranninger, died, when she continued to care for him until the time of his death.

There can be no question that the services rendered were of the most valuable and meritorious character. Mr. Ranninger suffered from some severe nervous disorder, and needed constant care and waiting. He was of a most irritable and exacting disposition, and the duties, which Sophia was obliged to discharge, were of a most disagreeable nature. She was, however, a faithful and devoted nurse, and, excepting when prostrated from the effects of over-xertion, was constantly in his service. The old man took great pride in attesting her devotion to him, and on frequent occasions freely expressed his gratitude to her, for her fidelity. Services of this character, rendered under such circumstances, are worthy of reward, and when they are shown to have been rendered, the law implies a promise to pay what they are reasonably worth.

She was not of kin by blood to the decedent; she was the niece of his second wife. This is a fact worthy of consideration in rebuttal of the legal implication stated, but it does not defeat it. There is some evidence that she had means of her own, realized from the dressmaking business, and that she

paid for such articles as she needed for her own use, medical attendance, etc.; that she performed the duties of a nurse and housekeeper, and appeared to occupy toward Ranninger the relation of a person employed. In confirmation of this, it was shown that Ranninger, in his last will and testament, bequeathed to her, by name, a legacy of three hundred dollars, describing her as the niece of his deceased wife, and "at present employed " as his housekeeper. It can scarcely be questioned that Sophia Sieber was employed by Ranninger in the capacity stated; that she began that service during the serious illness of his second wife, and remained in that employment continuously until the day of his death.

There are some facts in the case, which might perhaps cast a doubt on her right to recover; but the auditor upon an examination of the whole case has found the facts essential to her recovery, and these findings have been approved by the court. The findings of an auditor when thus approved will not be set aside excepting for flagrant error.

In McConnell's App., 97 Pa. 31, the services were rendered at the rate of $4.00 per week. The first year's wages were paid in accordance with the contract; the demand for the sum sued for, was not made until after the death of the employer, nor for two years and more after the claimant had left his employment. In that case it was held that under the circumstances the wages would be presumed to have been paid. "This presumption," says Mr. Justice PAXSON in that case, "rests upon the known fact, that in England servants' wages as a general rule are paid at stated periods, and it is entirely immaterial whether such periods are weekly, monthly or yearly; and upon the further fact, that a servant rarely leaves the service of an employer and remains away for months or years, without a settlement of some sort with his or her employer, or at least a demand for payment. The same facts exist in this country, and there is, therefore, the same presumption. In either case it is a presumption which the law raises from a known state of facts and a known course of dealing. It is, however, a presumption of fact merely, and liable to be rebutted."

In this case, however, the services were rendered up to the time of Ranninger's death, and her claim for compensation was made on the first distribution; there was no course of

dealing established between the parties; and, although the promise to pay is clearly established, there was no agreement to pay at any particular time or at any designated rate. Her personal relations to Ranninger, the nature of her services and the character of contract under which they were rendered, were peculiar and exceptional, and the presumption of payment which might ordinarily arise in the case of a domestic servant would not, we think, be applicable in such a case.

> The decree of the Orphans' Court is affirmed, and the appeal is dismissed at the cost of the appellant.