## Schrader, Appellant, *v.* Beatty.

*Master and servant—Presumption of payment.*

In an action against the estate of a decedent to recover for services, the presumption of payment which ordinarily arises in the case of a domestic servant does not apply where the evidence tends to show that the plaintiff although originally employed as a servant, at fixed wages, was promoted to the position of housekeeper, that she performed all the duties connected with such a position, and in addition tended decedent's bar, entertained his patrons, did all the buying for the household, and had access to his cash drawer; that no fixed amount of wages had been settled upon, but that the decedent had declared that her services were very valuable to him; that he could not get any one to do as she did for $15.00 or $20.00 per week; that she would be all right when he was gone; that she would be all right some day anyhow, as she would be his.

Argued Dec. 4, 1901. Appeal, No. 179, Oct. T., 1901, by plaintiff, from judgment of C. P. Montgomery Co., March T., 1900, No. 148, for defendant, non obstante veredicto, in case of Emma Elizabeth Schrader v. James Beatty, Administrator of Samuel R. Beatty, Deceased. Before RICE, P. J., BEAVER, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit for services. Before SWARTZ, P. J.

At the trial the defendants claimed that as the plaintiff had entered decedent's service as a domestic servant at $2.50 per week, the presumption was that her wages had been paid, not-

withstanding the fact that her duties had been enlarged. It appeared that plaintiff claimed at the rate of $10.00 per week from October 1, 1892, to May 12, 1899. The services which the plaintiff rendered to the decedent, and her relations to him, are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,631.50, subsequently reduced to $1,316.60. The verdict was subject to the question of law, " whether there is any evidence in this case which entitles the plaintiff to recover." The court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant on the question reserved.

*Nicholas H. Larzelere,* with him *M. M. Gibson* and *Gilbert Rodman Fox,* for appellant.—The presumption of payment was rebutted: Ranninger's App., 118 Pa. 20; McConnell's App., 97 Pa. 31.

*Montgomery Evans,* with him *John Eckstein Beatty, James B. Holland* and *John M. Dettra,* for appellee.—Where a contract for wages exists, at a fixed price, and a servant continues in the employment with evidence of additional duties but not for increased compensation, a new contract will not be presumed: Ranck v. Albright, 36 Pa. 367; Howard v. Drexler, 14 Pa. Superior Ct. 59; Moore's Estate, 12 Pa. Superior Ct. 599; McHugh's Estate, 152 Pa. 442; McConnell's App., 97 Pa. 31; Houck v. Houck, 99 Pa. 552; Coulston's Est., 161 Pa. 151; Hughes's Est., 176 Pa. 387; Rosencrance v. Johnson, 191 Pa. 521; Moore's Estate, 12 Pa. Superior Ct. 599; Howard v. Drexler, 14 Pa. Superior Ct. 59; Ranninger's Appeal, 118 Pa. 20.

OPINION BY WILLIAM W. PORTER, J., January 21, 1902:

This is an action at common law against a decedent's estate for compensation for services performed by the plaintiff for the decedent. The trial resulted in a verdict for the plaintiff. The charge of the court was elaborate and protected every right to which the decedent's estate was entitled. The court, however, reserved the question: " Whether there is any evidence in this

case which entitles the plaintiff to recover." On this reservation judgment was entered non obstante veredicto. We think that the verdict should have been allowed to stand. But one construction can be placed upon the verdict as rendered, namely, that the jury gave credence to the testimony for the plaintiff and rejected that for the defendant. . It will be seen from the charge that on the facts shown the court held that there was a legal presumption that the plaintiff had been paid because her employment was that of a household servant. The verdict shows that, in the opinion of the jury, the proofs overcame the presumption. We think the learned judge went too far in holding that there was a clear presumption of payment. His manner of submitting the case, therefore, was to the disadvantage of the plaintiff. But if the verdict be reinstated this results in no injury to the plaintiff.

The decedent was the proprietor of a small hotel and bar. The plaintiff was a young girl when she entered his employ as a servant, receiving as wages $2.50 per week. Subsequently, the decedent's housekeeper retired, and the plaintiff was promoted to that vacated position. She performed all the duties connected with such an employment, and in addition tended the bar, entertained the decedent's patrons, did all the buying for the household, and had access to the decedent's cash drawer. She was on terms of some intimacy with the decedent, who, on several occasions took her driving in the park. He paid a large doctor's bill for her, and, as intimated by some of the testimony, contemplated marrying her. There was testimony that when she became housekeeper no specific amount of wages was agreed upon. One witness testifies that the decedent told the plaintiff, " Now take charge of the house and I will do what is right. I will see that everything is all right." Another witness says, " When the former housekeeper left, the decedent took Lizzie as housekeeper to have full control of the house. She attended to everything, bought everything." The decedent became a supervisor. It was testified that after he " got a public office he could not be at home as much as he had been. His business would not allow it. Then Lizzie had general charge." Another witness says that the decedent several times declared to him that the plaintiff " was very valuable to him and that in case of her death he would not know how to replace

her; that she had been very economical and looked after things as well as he could look after things himself when he was there." No book account was exhibited showing payments to the plaintiff of any kind. Her lips being sealed by the death of the decedent, no direct testimony from her could be received showing whether she did or did not receive any payments. She could not be permitted to show credits for the amounts which she was willing to admit she had received. That she had money in the hands of the decedent would seem to be inferable from the fact that he paid a bill for her for some $93.00 for a set of furniture. This incident is treated as if a gift had been made by the decedent to the plaintiff, but the testimony of the witness shows that the decedent declared that the furniture was the plaintiff's, that she was buying it. The bill, however, was sent to and paid by the decedent. These pieces of evidence are collected to show that there was no clear presumption of payment by reason of the character of the employment. It seems apparent that the relation of the plaintiff to the decedent was not that of a mere domestic servant. True she performed household duties in part, but she did far more than this, and assumed responsibilities beyond those incident to such a position. Upon the testimony her personal relations to the decedent can scarcely be regarded as those of a servant conclusively presumed in first instance to have received periodic payments during her employment.

The language of Mr. Justice CLARK, in Ranninger's Appeal, 118 Pa. 20, is peculiarly applicable to this case: "Although the promise to pay is clearly established, there was no agreement to pay at any particular time or at any designated rate. Her personal relations to Ranninger, the nature of her services and the character of the contract under which they were rendered, were peculiar and exceptional, and the presumption of payment which might ordinarily arise in the case of a domestic servant would not, we think, be applicable in such a case." The references to the testimony above made, however, we think show further that, even accepting the burden put upon the plaintiff by the trial judge, the verdict of the jury should stand. There was proof of the rendition of the services; of the employment and promise to pay. It was also shown that in a conversation in which the decedent commended the plaintiff, he

stated that he could not get any one to do as she did for $15.00 or $20.00 per week. The witness said to him, "I don't see how you get her to do it for nothing." He said: "She will be all right some day. She will be all right when I am gone. She will be all right some day anyhow. She will be mine" This declaration was made some two or three months before decedent's sudden death, and upon it the jury might have predicated that up to that time the plaintiff had either not been paid, or had not been fully paid, but that it was the intention of the decedent that she should be paid, and that he regarded her as entitled to payment. It was shown that the decedent paid his bills regularly as a rule. But only one account book was produced, and this had no bearing upon the plaintiff's claim. All the decedent's books passed into the hands of the decedent's family. The fact that the decedent paid his usual bills promptly might or might not weigh against the plaintiff. The law properly throws many safeguards around decedent's estates, but does not impose impossible burdens upon a creditor whose debtor, as in this case, suddenly dies leaving the claimant still in his employ, but with, perhaps, only meager proof of the claim. This plaintiff was not a relative of the decedent, nor was her claim stale in presentation. It was brought to the knowledge of the counsel of the estate within a few days after the decedent's death. While the testimony submitted by the defendant, if believed, would undoubtedly have supported a verdict against the plaintiff, yet we are bound to assume, in the present status of the case, that it was the testimony for the plaintiff which the jury regarded as true, and upon the jury lay the burden of weighing the testimony and of ascertaining the facts.

It may be were the whole case to be determined by a discriminating, trained, professional mind, the result would be as the learned court below made it. But we think the learned court was led, in passing upon the motion for judgment non obstante, into a review of all the testimony irrespective of the finding of the jury, and into giving to the defendant a judgment which, were the court finding facts, might have been justifiable.

The judgment of the court below is reversed, and judgment is now entered for the plaintiff on the verdict for $1,316.60.