# Davies' Estate.

*Wills—Legacy—Legacy payable out of proceeds of land—Time of payment.*

Where a testator devises a farm to his wife for life and after her death to a son, and gives to a second son a money legacy "to be paid after the decease of my wife, or as soon as the farm is sold, if my wife and son, or either of them shall sell the farm that is here given or bequeathed to them," the legacy is payable upon the death of the wife, and if the legatee makes no demand for payment until the death of his brother and the sale of the farm forty years after the death of his mother, he will be barred from recovery by the Act of April 27, 1855, P. L. 369.

*Decedents' estates—Claims for domestic service—Other services—Presumption of payment.*

Where a woman makes a claim against the estate of a decedent for unpaid wages and it appears that in addition to rendering domestic services she acted as housekeeper, and clerk, bookkeeper and collector in the decedent's business, she will not be bound by the legal presumption that her compensation had been regularly paid during the lifetime of the decedent.


Argued March 1, 1915.  Appeal, No. 14, March T., 1915, by William S. Davies, from decree of O. C. Susquehanna Co., April T., 1913, No. 11, dismissing exceptions to report of auditor in Estate David Davies, deceased.  Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.  Affirmed.


Exceptions to report of George P. Little, Esq., auditor.

The opinion of the Superior Court states the facts of the case.


*Errors assigned* were in dismissing exceptions to auditor's report.


*A. B. Smith,* for appellant.—When the payment of a legacy is coupled with a devise so that its payment is

made because, or as a condition on which the devise is made, then the latter is chargeable with its payment: Clery's App., 35 Pa. 54; McCreedy's App., 47 Pa. 442; Wirts' App., 69 Pa. 173; Moran's Est., 13 Pa. Superior Ct. 251; Weaver's Est., 39 Pa. Superior Ct. 419.

The legacy in question became due and payable at the death of David Davies, the last surviving of the two devisees of the "Round Hill Farm," under the will of W. T. Davies, deceased; this because such death precludes the exercise of the power to sell: Palm v. Palm, 51 Pa. Superior Ct. 260.

The legacy to John R. Davies vested in him at testator's death, payment only thereof being postponed until the "Round Hill Farm" should be sold: Moran's App., 13 Pa. Superior Ct. 251.

The decedent debtor was a farmer and it is to be borne in mind that all the services which Mrs. Adams performed under her contract for services were those usual and incidental to the conduct of the household affairs and other services commonly performed at farm work: Taylor v. Beatty, 202 Pa. 120.

*H. A. Denny,* with him *F. A. Davies,* for appellee.

OPINION BY HEAD, J., July 21, 1915:

Two principal questions are involved in the present appeal: (1) When did the legacy of $1,000, bequeathed by the will of William T. Davies to his son John fall due and become payable? (2) Was the learned court below guilty of reversible error in adopting and confirming the conclusion of the auditor that Mary Adams, the claimant, was more than a menial servant in the household of her uncle and that her claim therefore was not barred by the presumption of the law that the wages of such a servant have been regularly paid at ordinary and customary intervals?

(1) The portions of the will of William T. Davies which must control the disposition of the first question

are as follows: "I give and bequeath to my beloved wife
Margaret and my son David this farm (known as the
"Round Hill Farm") containing about 110 acres more
or less, share and share alike, during the lifetime of my
wife Margaret, but at her decease her part or portion is
for my son David......I give and bequeath to my son
John the sum of one thousand dollars to be paid after the
decease of my wife or as soon as the farm is sold, if my
wife and son David or either of them shall sell the farm
that is here given or bequeathed to them." This will was
dated March 23, 1870, and duly admitted to probate on
September 27th, following. The widow, Margaret, died
in 1871, from which date the son David became the sole
owner of the land. He continued to own and occupy it
until the date of his death in 1911. It was sold by his
administrator in 1912 for the payment of his debts.
Upon the distribution of the fund arising from the sale
of the land, the administrator of John Davies, the legatee
referred to, who died in 1894, intestate, claimed payment
of the legacy. The learned auditor and court below de-
nied the claim on the ground that the legacy became due
and payable on the death of the widow in 1871, and, as
the evidence disclosed no payment on account of it or de-
mand made for it during the more than forty years that
had elapsed since it became due, there was nothing to
take the claim out of the operation of the Act of 1855.

Under the language of the testator's will, which we
have quoted, it is clear that the time primarily fixed for
the payment of the legacy was at and immediately after
the death of the widow. "I give and bequeath to my son
John the sum of one thousand dollars to be paid after
the decease of my wife, etc." Had the will stopped at
that point, there would be no room for argument as to
what was the intent of the testator. The language used
speaks for itself. As long as his wife survived him he did
not wish the land, which was to be hers during life, to be
subjected to the burden of the payment of the legacy;
but with her death and the consequent vesting of the

entire fee in his son David, the reason for further post-poning the payment of the legacy ceased to exist. Now did the testator, by the use of the language following that last above quoted, intend to advance the date of payment on the happening of a certain condition or to retard it indefinitely. Keeping his primary intent before us, it appears to us to be plain that his meaning was that if, during the lifetime of his wife, she and her son should convert the land into money, then the time of payment of the legacy was to be accelerated and it would become payable out of the purchase-money. We can find no language from which we can satisfactorily conclude it was the intention of the testator that the legacy was not to become payable until there had been an actual sale of the farm by somebody, no matter how remote such date might be from the time when the legacy was given or from the date primarily fixed for its payment. In such a case mere lapse of time might easily prevent the bounty of the testator from becoming in any way effective to the legatee for whom it was intended. . We are of opinion therefore that the legacy to John Davies fell due and became payable at and immediately after the decease of his mother, the widow of the testator. If in point of fact it never has been paid, this result must be charged to the laches of the legatee and the provisions of the Act of 1855.

(2) It is not necessary at this late day to refer to or even cite the many cases which have declared the presumption raised by the law to protect the estates of deceased persons from stale claims for the wages of ordinary servants. The reasons that support the presumption have been often and convincingly stated. Had it been found, upon proper evidence, that the services rendered by Mary Adams, the claimant, were simply those embraced in the term "domestic service," undoubtedly the presumption would have applied and her claim should have been rejected. There is no question in this case that her services were rendered for compensation,

nor is there any difference between the parties as to the
amount of such compensation.   The appellant must rest
his case entirely on the legal presumption that the com-
pensation was regularly paid during the lifetime of the
decedent.   The learned court below confirmed the finding
of the auditor that the services rendered by the claimant
were different, both in character and degree, from those
that would ordinarily be rendered by a domestic servant.
The evidence showed that the deceased was engaged, to
some extent at least, in the business of selling agricul-
tural implements.   There is ample evidence, if believed,
to warrant the conclusion that the duties performed by
the claimant went far beyond the range of domestic serv-
ice.   We quote from the language of one witness: "She
had general management of the house and the buying
and selling of chickens, pigs, calves and such things, and
butter, and he would always refer me to her with the
money and she would always turn the money over to him
and explain about it to him in Welsh......Yes, she done
all of his business that I have any knowledge of.   If there
was a note or anything to be drawn up, she would do it,
and he would send her out collecting and on the er-
rands."   Another witness testifies: "She was general
housekeeper, clerk, bookkeeper, and did all that was
done there......Whenever we bought or sold, she tended
to all that business, doing the bookkeeping and collecting
afterwards."   In the light of such testimony we might
well apply the following language of Mr. Justice CLARK
in Ranninger's App., 118 Pa. 20: "Her personal rela-
tions to Ranninger, the nature of her services and the
character of contract under which they were rendered,
were peculiar and exceptional, and the presumption of
payment which might ordinarily arise in the case of a
domestic servant would not, we think, be applicable in
such a case."   So in Schrader v. Beatty, 19 Pa. Superior
Ct. 212, Judge W. W. PORTER, speaking for this court,
said: "It seems apparent that the relation of the plain-
tiff to the decedent was not that of a mere domestic serv-

ant. True she performed household duties in part, but she did far more than this, and assumed responsibilities beyond those incident to such a position." In that case, following Ranninger's App., supra, we held the legal presumption already referred to would not be a bar to the payment of the claimant.

Following the doctrine of these cases and many others we might cite, we conclude the learned court below was right in the disposition made of this question. We discover nothing else in the assignments of error that requires any particular discussion. They are all overruled.

Decree affirmed, the costs of this appeal to be paid by the appellant.