In re: Estate of J. C. Porter, Deceased.

Argued April 28, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*John M. Reed,* for appellant.

*Homer N. Young,* for appellee.

OPINION BY JAMES, J., July 14, 1933:

This is an appeal by the residuary legatees from an order of the orphans' court of Allegheny County allowing the claim of Sarah J. Douglass for $5 per week for a period of six years immediately preceding decedent's death, or a total of $1,560. Decedent died on January 18, 1932 and the final account was filed on July 29, 1932.

The testimony taken at the audit disclosed that Sarah J. Douglass, claimant, in October, 1924, entered the employ of Jesse K. Seright, doing general office and stenographic work and at that time was seventeen years of age. Her employer conducted an insurance business at 920 Bessemer Building, Pittsburgh, Pa., and at the time she entered his employ and for some time prior thereto, Joseph C. Porter, decedent, an elderly bachelor, occupied desk space in his office, for which he paid $75 per quarter in advance. Decedent, who was a close personal friend and associate of Mr. Seright for many years, was not engaged in active business but was principally engaged in the handling of his own investments and securities. His estate at the time of his death showed a balance for distribution of $451,686.07. At the time of his death, claimant still remained in the employ of Mr. Seright. During the

period of her employment, claimant from time to time performed various services for decedent, the character of which was proven largely by her regular employer, Seright, who also testified that the services rendered were not within the course of her employment for him. The testimony of Seright disclosed that during the period for which payment was demanded, claimant did any work for the decedent that she was asked to do and further "I would say practically all kind of office work; she would write his letters; she would make entries in his books; she would attend to correspondence for him, and she quite often went to the bank for him and went around to his brokers' offices, as long as I ever knew; to Moore, Leonard and Lynch just here a year ago; in general, everything that a girl would be expected to do about an office." His testimony shows also that she did stenographic work; bookkeeping; striking off letters; made out lists of investments; went to hospital; kept files; posted interest checks—in the ledger account—deposited checks in the bank; she worked in the office in the evening often; during the noon hour quite often; during his illness, she went to his home very late at night and very early in the morning; when Mr. Porter was out of town he would write letters to her and ask her to attend to certain things; she recorded his phone calls, made out his checks, made stub entries, did office errands, prepared long lists of his many investments. All these services were accepted by the decedent and he recognized their worth and value because on several occasions he had spoken to his associate, Mr. Seright, about her services and that he wanted to compensate her; that he wanted to take care of her and that he wanted to give her for these services from $1,000 to $1,500; that the decedent was figuring on how he could give the claimant this money without the young man, who was engaged to Miss Douglass, getting hold of

it, and that he mentioned this fact to Mr. Seright in his own home two months before his death. Seright testified that the reasonable worth and value of the services rendered by the claimant was $5 per week and there was no evidence that decedent during his lifetime had made any payment to claimant. An examination of decedent's check books showed no payments to claimant although testimony shows that he paid part of his bills in cash, including payment to nurses. Appellants contend that the testimony fails to establish an express contract; that the presumption of payment was a bar to the claim and that the proof of the value of services was insufficient.

It is clear from the above recited testimony that the decedent accepted the valuable services of the claimant, from which the law raises an implied promise to pay. There being no relationship between her and decedent either by consanguinity or affinity, there is an implied promise to pay, for which services claimant is entitled to recover on the basis of quantum meruit.

"Generally, when services have been rendered by one person to another, the law presumes a promise, on the part of him who has received them, to pay what the services were reasonably worth. Such an engagement is accordant not only with reason and justice, but with the common usages of society, and hence a contract to pay is implied." Smith v. Milligan, 43 Pa. 107, 108.

"Implied contracts are such as reason and justice dictate, and which the law presumes from the relations and circumstances of the parties. Nothing is better settled than that the performance and receipt of services, or the furnishing of board, raises an implied assumpsit by the one who receives to compensate the other. ...... Frequently, it has been said that 'relationship, either by consanguinity or affinity, is a fact

which tends to rebut the presumption which the law raises, that a promise to pay is intended when personal services are rendered. But, alone, it does not overcome that presumption except in the case of parent and child. In all other cases there must be evidence beyond the relationship that the creation of no debt was intended.' '' Miller's Appeal, 100 Pa. 568, 570; Curry v. Curry, 114 Pa. 367; Kerr v. Wilson, Exr., 284 Pa. 541. Where services are rendered and accepted, not only is there an implied promise to pay but the burden is on the one denying liability to show that no debt was intended: Gibbs Est., 266 Pa. 485. There can be no doubt that claimant performed valuable services for the decedent which were not in the course of her regular employment; this in itself is sufficient to raise an implied promise on the part of the decedent to pay for these valuable services, which if supported by proof of nonpayment and worth of services, should be allowed.

Many cases have been decided by our courts which have declared the presumption raised by the law to protect the estates of deceased persons from stale claims for the wages of ordinary servants and undoubtedly if the services rendered were simply those embraced in the term "domestic service," the presumption would have been applied and her claim might have been rejected. The auditing judge found as follows: "She was not a domestic servant, and the rule of presumption in such cases would not apply. She has shown beyond any doubt that she performed valuable and continued services and sufficient proof of their value. She has also offered some evidence of nonpayment, and we are now of the opinion that the burden was shifted to those objecting to her claim to prove payment. In Davies' Est., 60 Pa. Superior Ct. 360, where the facts were somewhat similar, the court said, quoting from the opinion in Ranninger's App.,

118 Pa. 20, 'Her personal relations to Ranninger, the nature of her services and the character of contract under which they were rendered, were peculiar and exceptional, and the presumption of payment which might ordinarily arise in the case of a domestic servant would not, we think, be applicable in such a case.' This was also held in Schrader v. Beatty, 19 Pa. Superior Ct. 212.'' In the case of Rohrbach v. Ross, 75 Pa. Superior Ct. 536, the rule is reiterated and cites with approval the controlling rule as stated in Schrader v. Beatty, 206 Pa. 184, 187: ''This rule is for the protection of a master and his estate and is never relaxed when the relation between him and his employee are those purely of master and servant; but when he establishes and maintains new and different relations to his servant during the continuance of the service, he himself takes the case out of the rule.'' The character of the services rendered to decedent is not of the ordinary master and servant type and therefore the presumption of law that compensation was regularly paid during the lifetime of decedent would not apply. The testimony of Mr. Seright that decedent had always paid his bills by check and the fact that an examination of his check books failed to disclose the payment of any amount to the claimant by check, coupled with the acknowledgment made by decedent two months prior to his death, if believed by the court, would have been sufficient to overcome any presumption of payment that might have been invoked.

As to the value of the services rendered by claimant, no one was more familiar with it than Mr. Seright, claimant's regular employer, a confidential and intimate friend of the decedent who was personally familiar with a great deal of the business affairs of decedent and who was daily in a position to observe and note the nature and character of the services

rendered. Being an employer of this young lady for other services of a similar character, he was qualified to express an opinion as to the reasonable worth of the services rendered. In addition, the value of the services as fixed by Mr. Seright, when considered with the declaration of the decedent that he would like to leave her $1,000 to $1,500 "to be an acknowledgment of the work done for him," would seem to be in accord with his idea of their value. We believe this testimony is sufficient for the court to find the reasonable worth of the services rendered to decedent.

In view of the above, we will affirm the order of the lower court that the claim should have been allowed on the basis of $5 per week but find that the court was in error in sustaining the claim for a period of six years prior to the date of decedent's death. In the recent case of Est. of A. Koonce, 105 Pa. Superior Ct. 539, we held that "Where services of a very general character are rendered for a long, continuous period of time and the rate of compensation is uncertain, the statute of limitations bars a claim representing wages earned in the performance of such services more than six years before the filing of the account of the debtor's estate."

The decree of the court below is affirmed subject, however, to the modification that all of the account of the claimant accruing more than six years prior to date of filing the account, to wit, July 20, 1932, is barred by the statute of limitations and distribution is directed to be made in accordance herewith.