Cleadis SHEPARD, d/b/a Raytown Plumbing & Sewer Service, Respondent,

v.

Mrs. Marvin W. GLICK, (Bessie McGinty), Appellant.

No. 24480.

Kansas City Court of Appeals.

Missouri.

June 6, 1966.

**442**

Elwyn L. Cady, Jr., Kansas City, for appellant.

Richard T. Cole, Raytown, for respondent.

MAUGHMER, Commissioner.

This is a suit based upon an alleged oral contract under which plaintiff, in the spring of 1961, supplied materials, performed services and installed a sewer line into a residence property located at 6209 Manning in Raytown, Missouri, which was owned by defendant and her husband, Marvin W. Glick. Mr. Glick died on October 16, 1962. This suit is against Mrs. Glick alone and seeks recovery of the compensation provided for by the contract. It was tried by the court without a jury. The court found that defendant had entered into the alleged oral agreement, and gave judgment for plaintiff in the sum of $990.34 (amount of services and materials furnished) plus interest from October 29, 1962, (the date upon which suit was filed) in the sum of $160, or a total judgment of $1150.34. It is conceded that the services and materials were furnished and no criticism is leveled as to the amount of the charges. Defendant, however, contends that the contract was made only with Mr. Glick, who was her husband at that time. She denies there was any contract with her or with her and her husband jointly.

The plaintiff, Cleadis Shepard, was the owner of and did business as the Raytown Plumbing & Sewer Service. He testified that about March 1, 1961, a main sewer line became available to the property at 6209 Manning, owned by defendant and her then husband, Marvin W. Glick. He said that he met one evening in the Glick home with Mr. and Mrs. Glick and a neighbor, Mr. Plost, who wanted an easement from the Glicks for use in his sewer connection. The easement was granted. Plaintiff said that the Glick property had a sublayer of rock which it was necessary to go through, that springs were there and water filtered through and the Glick basement was full of water most of the time. Plaintiff's testimony was that he contracted to install and connect their residence to the sewer. He said that because the existence of springs and rock made it impossible to accurately estimate the amount of work which would be required, the contract was on a 10 percent cost plus basis. Mr. Shepard purchased a sewer permit and stated: "I brought in the material and brought in my machine and my men, and we hit rock, and I brought in a jackhammer, and I had two gasoline pumps running most of the time, a winch and a torque gear, because we was working in a ledge of rock which was fed by springs". "We installed a tie-on to the sewer and I picked up the plumbing and I had to stay low enough to pick up their basement when I went in and removed their sump pump and put in a subsoil drain on the outside of their house". Plaintiff's charge for this work was $1,015.34, but Mrs. Marvin Glick paid $25 by check, leaving a balance of $990.34 still due.

Mr. Shepard said he submitted his bill to the Glicks and was told: "There was a loan set up for it and I would be paid just as soon as the loan was approved". "I was told this by both parties". He said he talked to both Mr. and Mrs. Glick about doing the work on a cost plus basis, that Mrs. Glick

"was never out of our presence" while we talked and she said: "If it will stop us flooding out every time that there comes a little rain we want the sewer put in". He testified that Mrs. Glick told tim: "We will pay you as soon as we get the money from the loan".

The parties agree that the materials were furnished, the labor was performed and the charges are reasonable and proper. Mr. Charles A. Runsinger, Jr., Vice President and Cashier of the Laurel Bank in Raytown, testified that Mrs. Glick attempted to secure a loan from the bank and that he personally discussed it with her in the spring of 1961. He understood "this money, $1,000, was needed to pay for the sewer hookup". The loan was never made.

The defendant, Mrs. Marvin W. Glick, (now Bessie McGinty by marriage) testified. She is an industrial nurse. She did not deny calling plaintiff to come to their home regarding the sewer. She said he was there several times; that the contract was with her husband, and that her husband was the one who tried to secure the bank loan. She said she knew that rock had to be removed before the sewer line could be installed, knew springs were in the yard and knew they had a basement water problem. She agreed that she wanted to connect with the sewer and wanted to get the basement drained. She denied that she ever promised to pay plaintiff and was unable to recall if she told him the bank loan "had fallen through", but she would obtain another one and pay him. The record does not reveal if title to this residence property was in the names of both Mr. and Mrs. Glick.

The sole issue on appeal is whether or not Mrs. Glick was a party to the oral contract under which plaintiff agreed to and did connect the Glick premises to the sewer. On appeal defendant contends that she was not a party to the contract and the verdict and judgment should have been in her favor, that there is no evidence that she promised to pay, that her husband was the

contracting party and that "proof of a joint contract does not support a definite and certain contract between plaintiff and defendant".

Section 510.310, V.A.M.S. and Civil Rule 73.01(d) V.A.M.R. prescribe the scope of our review and tell us:

"The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses".

This court in Home Trust Co. v. Shapiro et al., 228 Mo.App. 266, 64 S.W.2d 717, 733, said it this way:

" * * * it becomes the duty of this court to review the evidence, the findings, and decree below, and to render such judgment as in its opinion conforms to the law and the evidence, deferring where it may to the conclusions reached by the chancellor; but, if, upon review of the entire record, it is unable to agree with his conclusions and judgment, it becomes its duty to follow its own conclusions and order judgment in conformity therewith".

It is true as defendant contends on appeal that in order for a contract to arise under the laws of Missouri, there must be a definite meeting of the minds and the nature and extent of the obligations must be certain. However, as to these requirements generally we find this statement in 17 C.J.S. Contracts § 4, p. 557:

"Neither a written offer and acceptance nor oral counterparts are essential to establish a contractual relationship, for unambiguous conduct of one party toward another under such circumstances as clearly to manifest an intention that one party perform and that the other party compensate for such performance is sufficient".

And on page 556:

> "* * * 'implied contract' has been defined as a contract which arises by legal inference and upon principles of reason and justice from certain facts, or where there is circumstantial evidence showing that the parties intended to make a contract".

In the footnote thereunder, we find these excerpts from foreign opinions:

> "(1) ' "Implied contract" is one dictated by reason and justice, and which the law presumes from the relation of the parties.' Pa.—In re Porter's Estate, 167 A. 490, 492, 110 Pa.Super. 27.

> "(2) An 'implied contract' is inferred from the conduct, situation, or mutual relations of parties, and enforced by the law on the ground of justice. Cal.—Bush v. Lane, 326 P.2d 640, 161 C.A.2d 278— Grant v. Long, 92 P.2d 940, 33 C.A.2d 725. Ga.—Young v. Lewis, 29 S.E.2d 267, 70 Ga.App. 627".

■ In the case before us it is undisputed that a contract was entered into with Mr. Glick. Under it plaintiff was to connect the property to the sewer, to cut through the rock and provide drainage of the spring water from the basement. It is undisputed that his compensation was to be cost plus 10 percent, and there is no contention but that on this basis the judgment is for the correct amount. Therefore, there was a meeting of the minds and the agreement is definite as to the work to be done and the price to be paid. All parties concede that such an agreement with plaintiff was made by Mr. Glick. The disputed issue and the only disputed issue is whether or not Mrs. Glick was a contracting party. The trial court found that she with her husband, was a contracting party. What evidence is there from which such a conclusion should be drawn? We shall list the chief points as they appear to us: (1) Mrs. Glick owned at least a wife's share in the property; (2) she wanted to "hook on" to the sewer. She knew it was necessary to go through rock and drain the springs in order to stop the basement floodings. She said she wanted these things done; (3) she called plaintiff to come to their home and discuss the Post easement; (4) she paid plaintiff $25 on this account with her personal check. Plaintiff had done work for the Glicks before. He discussed and entered into the oral contract in their home. These factual conclusions appear from defendant's own testimony and, standing alone, are possibly sufficient to establish liability.

However, in addition we have the affirmative testimony of the plaintiff. He says Mrs. Glick was present on all occasions when the matter was discussed and that she took part as a principal in the contract negotiations and agreement; that she promised to pay the bill, tried to get a loan from the Laurel Bank to pay it and when that effort failed, told plaintiff she would get a loan elsewhere. The Laurel Bank's Vice President and Cashier said Mrs. Glick personally consulted him and tried to secure a $1,000 loan from the bank and told him the proceeds were to be used to pay plaintiff for the sewer connection work and supplies. If the trial court believed this testimony and it quite evidently did believe it, then there was direct, substantial evidence that Mrs. Glick was and became a party to the contract. In addition, defendant's denials as a witness do not read very impressively. She did not so much deny, as fail to remember.

We have examined the cases cited by appellant. Some of these opinions discuss the general rules of contracts about which there is no dispute. The case of Roper v. Clanton et al., Mo.App., 258 S.W.2d 283 presents a suit on an oral contract by an electrical contractor against a husband and wife, owners of the property by the entirety. The case was tried by the court. Mrs. Clanton was released at the close of the plaintiff's evidence and the court found for Mr. Clanton at the close of all the evidence. The appellate court sustained as to Mrs.

Clanton, who had no connection with the making of the contract except that she was a co-owner, but directed entry of judgment against Mr. Clanton. The opinion is not authority for a ruling for defendant in the case before us.

We believe there was substantial, credible evidence upon which the trial court could find that defendant was a party to the oral contract sued upon and is liable thereunder. In addition, the conduct, general situation, mutual relations and unambiguous acts all support such a result. We agree with that conclusion. No additional assignments of error are presented.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

HOWARD and BLAIR, JJ., concur.

CROSS, P. J., not participating.