## Gunn Estate

*Richard J. Raab,* for accountant.

*James P. Geoghegan,* for claimant Kevin Geuther Russell.

*Jesse W. Beeghley Jr.,* for Montgomery Country Society for the Prevention of Cruelty to Animals.

*Elizabeth D. Shevlin,* for American Cancer Society.

STEFAN, *J.,* April 20, 1993 — The first and interim account of Charles R. Breznicky, executor under the will of Edna M. Gunn dated September 21, 1988, was called for audit on September 8, 1992. Hearing on the objections filed thereto having been held on December 22, 1992, the matter is now ripe for adjudication.

The account shows a balance of principal and income in the amount of $799,742.19.

The fund presently before the Orphans' Court is not subject to the payment of transfer inheritance tax to the Commonwealth of Pennsylvania. However, any amount awarded to claimant as a result of further hearing will be subject to said tax.

All parties having or claiming any interest in the estate, of whom the accountant has notice or knowledge, are stated to have received written notice of the audit in conformity with the rules of court.

The decedent died on May 6, 1989. Her will provided for the American Cancer Society and the Montgomery County Society for the Prevention of Cruelty to Animals to share her net estate equally. On August 18, 1992, claimant, Kevin Geuther Russell, filed objections to the executor's account, alleging that she and the decedent entered into an agreement in 1971 whereby she would take care of the decedent and her husband during their lifetimes in return for being made sole beneficiary of the Gunns' estate. Mr. Gunn predeceased Mrs. Gunn. In the objections, Mrs. Russell claimed the sum of $176,075.00 as the fair and reasonable value of services allegedly rendered and expenses allegedly incurred by her in providing this care to the Gunns. On December 15, 1992, Mrs. Russell filed amended objections to the account, in which she claimed the entire estate, or, in the alternative, the specific sum stated above.

At the hearing before the undersigned, the claimant first presented the testimony of her husband, James Russell. He married Kevin Russell in 1981 and met the decedent and her husband in 1982. He testified to being party to a conversation in August of 1982 during which the decedent said to his wife, "The time is coming when we are going to need your help. At that time,

can we count on you?" He stated that his wife replied in the affirmative, and the decedent then said, " 'You will not be sorry. In return for that help and that care, we will leave you our entire estate.' Those were the exact words that she used at the time." (N.T. 13.) Mr. Russell also testified that he and his wife moved from Florida to Pennsylvania in 1986 at the decedent's request. He stated that his wife would thereafter visit the decedent and her husband at least every other day. He listed the services Mrs. Russell rendered to the Gunns (taking care of their dogs, taking Mrs. Gunn to the hairdresser, to the food store, and out for lunch).

The next witness was Jean Heye who met and became friends with Mrs. Russell in 1971 when they both were Florida residents. She met the decedent at Kevin Russell's home in Florida in 1975. She spent time with the decedent at social gatherings and while showing her properties in her capacity as a real estate agent. Ms. Heye testified that the decedent discussed, in her presence, her plan to will her estate to Mrs. Russell in exchange for her help. She saw the decedent again in 1976 when she was in Florida for another visit with Mrs. Russell.

Gloria LeBeau, another Florida resident and friend of the claimant, next testified. She assisted Mr. and Mrs. Russell in their move to Pennsylvania in 1986 and met the decedent at that time. She testified that Mrs. Gunn told her that Mrs. Russell "was to be their heir and receive all of their property and estate" in return for taking care of the Gunns. (N.T. 49.)

Sandra Jarvinen, a third friend from Florida and a former supervisor of the claimant, echoed the testimony of Ms. LeBeau. Ms. Jarvinen also helped the Russells relocate to Pennsylvania. She testified that both Mr. and Mrs. Gunn told her that Mrs. Russell would inherit everything they had for all her help.

Raymond Fanic, a neighbor of the Gunns, testified to seeing the claimant at the Gunns' residence approximately every other day, tending to their dogs, cutting the grass, picking Mrs. Gunn up to run errands, etc.

The objectant's next witness was Marjorie L. Walton, one of the Russells' neighbors. She testified to meeting Mrs. Gunn at the Russells' home on three occasions, to commenting on what a help Mrs. Russell was to her, and to being told by Mrs. Gunn that Mrs. Russell would be well rewarded for all her help in that she would inherit everything the Gunns had.

The claimant then called Emil Ciavarelli, a funeral director who became acquainted with the decedent shortly before the death of her husband. He stated that the decedent told him of her gratitude towards Mrs. Russell and of her intent to reward her. She also stated that she planned to make the SPCA and the Cancer Society beneficiaries of her estate. She told him: "[A]s far as the assets or property and personal effects ... I want to give to Kevin Russell." (N.T. 81.)

The claimant's final witness was Charles R. Breznicky, the decedent's accountant and the executor of her estate, who testified that Mrs. Gunn never took any deductions on her tax returns for payments to the claimant.

At time of hearing, the court took under advisement the issue of whether the objectant's amended claim for the entire estate was properly before the court. The estate contends the claim is time-barred under section 3383 of the PEF Code, which states: "The death of a person shall not stop the running of the statute of limitations applicable to any claim against him, but a claim which otherwise would be barred within one year after the death of the decedent shall not be barred until the expiration of one year after his death." The court determines that this claim was subject to a four-year limitation under

42 Pa.C.S. §5525(3) ("an action upon an express contract not founded upon an instrument in writing") and was timely presented. Accordingly, the amended claim can be considered on its merits.

We now turn to the measure of proof required for establishing the claim at hand. A contract to make a will or to bequeath by will, as other contracts, must be established by proof of an offer, an acceptance and legal consideration; the terms of the contract must be shown with certainty and lucidity; the evidence must be scrutinized with great care; there must be direct evidence in proof of the contract. The claimant must prove his case by clear and convincing evidence.

"There must be shown by believable testimony that the decedent *in the presence of the claimant,* made statements, in the form of a promise or offer, upon which the claimant could reasonably be expected to act in reliance on such statements. Such a rule is sound because a contract to bequeath by will must be shown as any other contract must be shown; essential to such proof is evidence that the minds of the parties met on the terms of the contract...." *Fahringer v. Strine Estate,* 420 Pa. 48, 54-55, 216 A.2d. 82, 85-86 (1966). (emphasis in original)

The instant claimant proved the existence of an oral contract through evidence of statements by the decedent in the presence of claimant in the form of a promise or offer. These statements were made in the presence of the claimant's husband. The objection to Mr. Russell's testimony on the basis of the Dead Man's Statute was properly overruled. See *Estate of Grossman,* 486 Pa. 460, 406 A.2d 726 (1979), wherein it was held that the spouse of an interested party to a transaction with a decedent may not be barred from testifying on the basis of marital status alone. Mr. Russell's testimony was bolstered by the numerous other disinterested witnesses to

whom Mrs. Gunn repeated her promise to make Mrs. Russell her heir.

The decedent did establish the existence of an oral contract to leave claimant her entire estate. However, because the estate consisted, in part, of real estate, and a contract to devise real estate falls within the statute of frauds, a question arises as to this contract's enforceability.

The claimant contends the contract is fully enforceable, relying upon *Beeruk Estate,* 429 Pa. 415, 241 A.2d 755 (1968), wherein the decedent made an oral agreement to leave the residue of his estate to his nephew in return for services rendered. In 1963, he executed a will which embodied the terms of this promise, but did not make specific reference to the parties' agreement. At the time of execution of the will, the decedent told his attorney of the bargain he and his nephew had struck. The decedent hereafter remarried and executed a new will in which he left the residue to his wife. After the uncle died and the later will was probated, the nephew filed a claim for the uncle's residuary estate.

The Supreme Court rejected the widow's statute of frauds argument against the nephew's claim, on the grounds that, although the contract was oral, the 1963 will constituted a sufficient memorandum of its terms to satisfy the statute. The court decided that the nephew was entitled to the entire residue since there was no violation of the statute of frauds.

Instantly, no writing or memorandum of any kind exists to take the oral contract out of the statute of frauds. Furthermore, the real estate cannot be severed from the personalty to permit enforcement of the parol agreement as to the latter alone. See *Norris's Estate,* 329 Pa. 483, 198 A. 142 (1938). Accordingly, the contract cannot be enforced in full or in part. Claimant's remedy must instead

lie in quantum meruit, i.e., damages representing the value of the services she performed. *Jones Estate,* 359 Pa. 260, 59 A.2d 50 (1948); *Estate of Bahl,* 25 D.&C.3d 58 (1982). Claimant having produced insufficient evidence of same at time of hearing to determine this value, a date will be set for consideration of this one issue. The parties should note that claimant's evidence will be restricted to a six-year period under the applicable statute of limitations. See *Estate of Porter,* 110 Pa. Super. 27, 167 A. 490 (1922).

The net ascertained balances of principal and income are awarded back to the accountant pending further proceedings in accordance with this adjudication.

The account is confirmed.

This adjudication is not final or appealable. After hearing on the issue of quantum meruit, the court will enter a decree nisi to which the parties may file exceptions.