## Home Protection Building and Loan Association Case.

Argued September 30, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Winfield W. Crawford,* with him *Charles F. Phillips,* for appellant.

*George J. Mallen,* Special Deputy Attorney General, with him *Orville Brown,* Deputy Attorney General, *Claude T. Reno,* Attorney General, *Russell Wismer* and *Edwin C. Emhardt,* for appellee.

OPINION BY HIRT, J., January 30, 1941:

The problem of this building and loan association was one of survival in the face of defaulting mortgages and depreciated real estate values. By 1933 it had acquired 60 pieces of real estate by foreclosure or otherwise and it held about 66 mortgages on other real estate. These mortgages were not first liens and of the real estate taken over by the association, only four or five properties were clear of incumbrances. The association also had guaranteed several mortgages held by others. The immediate problem was to make its real estate productive and to apply the rents to taxes and to the payment of principal and interest on mortgages held by others. For this purpose, the association was in need of the services of one experienced in real estate to supplement the efforts of its directors and by resolution of its board the association in 1933 employed one Lukens as its real estate manager at a salary of $1,800 per year and he served in that capacity until August 1935 when he retired. Appellant, a member of the Philadelphia bar and a certified accountant had acted as auditor for the association for about 10 years. The actual accounting work was performed wholly by his employees at a per diem rate; bills for this service were rendered periodically and were paid by crediting the amount of each bill to a mortgage given by appellant to the association.

When Lukens left in August 1935, appellant undertook the work of real estate manager of the association and continued to act as such until the association was taken over by the Secretary of Banking of the Commonwealth, for the purpose of liquidation, in December 1936. There was no express employment of appellant for this work by any officer of the association nor by resolution of its board. Appellant in support of his exception to the receiver's account refusing compensation, relied upon an implied contract. On the audit of the receiver's account the lower court considered the evidence insufficient to prove a valid contract by implication and denied compensation. The order will be reversed.

A contract, implied in fact, is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances. *Cameron v. Eynon,* 332 Pa. 529, 3 A. 2d 423. An implied contract must be legitimately inferred from the intention of the parties as indicated by the circumstances and "the ordinary course of dealing and the common understanding of men." *Hertzog v. Hertzog,* 29 Pa. 465. "Generally, there is an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary. A promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service. A promise to pay for services can, however, only be implied when they are rendered in such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party benefited. The service or other benefit must not be given as a gratuity or without expectation of payment, and the person bene-

fited must do something from which his promise to pay may be fairly inferred": 12 Am. Jur., Contracts, §5.

As to the circumstances under which appellant undertook the additional work the Managing Director of the association testified that Harris "took up the duties in connection with the real estate that were being performed by Mr. Lukens. There was no special arrangement made. The directors were so used to seeing him around that they simply didn't dispute the fact that any special arrangement had to be made. He simply fell into the shoes, we will say, of Mr. Lukens." It is true that "a party who relies upon a contract must prove its existence; and this he does not do by merely proving a set of circumstances that can be accounted for by another relation appearing to exist between the parties": *Hertzog v. Hertzog,* supra. But the additional services performed by appellant were administrative and managerial in character and cannot be classified as part of the routine work of accounting, and the services having to do with real estate were so extensive and diverse that their performance cannot be regarded as incidents of his employment as auditor. During the period from August 1935 to December 1936 appellant, although not a member of the board, attended all meetings of the directors and of the executive committee and assisted them in determining which properties could be saved with benefit to the association and in devising means to accomplish that end. He was familiar with the real estate and the properties against which the association held defaulted mortgages and he gave the directors the benefit of his judgment as to whether or not the association would be justified in continuing payments on prior incumbrances held by others. He attended to all payments of taxes on the properties and payments on incumbrances and in general supervised the maintenance of the properties and kept them tenanted and in repair. He was able to secure a reduction in the rate of interest of several mortgages prior in liens

to those held by the association. His testimony is that this additional service to the association in all took about one-half of his time. The directors were fully informed of the nature, character and extent of the work as rendered and accepted the benefit of appellant's services without dissent. He performed this work with the expectation of receiving compensation and there is no evidence that the association did not intend to pay him. On the contrary the inference is reasonable that payment was contemplated by both parties. See *Spencer v. Spencer*, (Mass.) 63 N. E. 947. The fact that appellant did not present his bill for services until the end of the period is a circumstance to be considered but is not of controlling importance. He has plausibly explained the delay. In *Hughes v. Dundee Mtge. & Tr. Inv. Co.*, 21 Fed. 169, affirmed in 124 U. S. 157, a case similar on the facts, a contract by implication was enforced notwithstanding no bill had been rendered for almost six years.

The services of appellant as real estate manager were of value to the association and were accepted by the directors under circumstances which raise an implied contract on behalf of the association to pay their fair value. Where essential facts are not in dispute the existence of an implied contract is a question of law. *Reitmyer v. Coxe Bros. & Co.*, 264 Pa. 372, 107 A. 739; In re: *Est. of J. C. Porter*, 110 Pa. Superior Ct. 27, 167 A. 490.

However, appellant's compensation is not to be computed at the rate of pay agreed upon by the association with its former real estate manager and he has not established his right to $1,800, the amount of his claim. On a rehearing of the exception which gave rise to this controversy, appellant should be given full opportunity to prove the nature, extent and value of the services rendered by him as in quantum meruit and to this extent his claim for compensation should be allowed.

Order reversed with a procedendo in accordance with this opinion.