**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3916
_____

DEBRA HAYBARGER,

Appellant

v.

LAWRENCE COUNTY ADULT PROBATION AND
PAROLE; COUNTY OF LAWRENCE; WILLIAM
MANCINO, in his individual and official capacities
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-06-cv-00862)
District Judge: Gary L. Lancaster
_____

Argued October 25, 2011

Before:   FISHER, VANASKIE and ROTH, *Circuit Judges*

(Filed  January 31, 2012)

Gregory G. Paul, Esq. (Argued)
Morgan & Paul
409 Board Street, Suite 270
Sewickley, PA 15143
        *Counsel for Appellant Debra Haybarger*

Edmond R. Joyal, Jr., Esq. (Argued)
Nadia V. Lazo, Esq.
Law Office of Joseph S. Weimer
975 Two Chatham Center
Pittsburgh, PA 15015
        *Counsel for Appellee William Mancino*

VANASKIE, *Circuit Judge*.

Debra Haybarger appeals the District Court's decision granting summary judgment to William Mancino on her claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  Haybarger contends that the District Court erred in holding that, as a matter of law, Mancino was not her "employer" under the FMLA.  As a threshold matter, we hold on an issue of first impression in our Court that a supervisor in a public agency may be subject to individual liability under the FMLA.  We further hold that there exists a genuine dispute of material fact concerning whether Mancino is himself subject to such liability.  Accordingly, we will vacate and remand the matter to the District Court.

I.

In 1988, Debra Haybarger began working as an office manager for Lawrence County Adult Probation and Parole ("Lawrence County Probation"), an agency of the Lawrence County Court of Common Pleas.  Beginning in 2001, her supervisor was William Mancino, the Director of Probation and Parole.  Mancino reported to Michael Occhibone, the court administrator, who reported to Judge Dominick Motto, the President Judge of the Lawrence County Court of Common Pleas.

Haybarger has Type II diabetes, heart disease, and kidney problems, which forced her to miss work frequently to seek medical attention.  Haybarger testified that Mancino expressed dissatisfaction with her absences despite recognizing that they were due to illness.  Most notably, Mancino repeatedly wrote in his annual performance evaluations that Haybarger needed "[t]o improve her overall health and cut down on the days that she misses due to illness."  (A. 73, 78.)  She also testified that he asked her why she breathed heavily and why she needed to visit the doctor

2

so often, and advised her that she needed to "start taking better care of [her]self." (A. 135.)

On March 23, 2004, Mancino formally disciplined Haybarger by placing her on a six-month probationary period that required weekly informal progress assessments and monthly formal meetings. Mancino alleged in his discipline letter that Haybarger's "conduct, work ethic[,] and behavior [were] non-conducive to the Adult Probation Office." (A. 92.) He further alleged that she demonstrated a "lack of leadership," "no clear understanding of the subordinate positions" that she supervised, and "a lack[] [of] empathy to subordinate workers." (A. 92.) Mancino testified during his deposition that he consulted with Occhibone before issuing the discipline letter, but that he had the independent authority to issue the letter on his own and did not require Occhibone's approval.

Approximately six months later, Mancino informed Occhibone and Judge Motto that Haybarger's job performance had not improved since he disciplined her in March 2004. Mancino claims that he did not have authority to terminate Haybarger's employment, but he admits that he advised Judge Motto to dismiss her. Further, he wrote in a summary of Haybarger's dismissal to Lawrence County Probation's Human Resources department ("Human Resources") that after two meetings with Occhibone concerning Haybarger's performance, he "told [Occhibone] that [he] had decided that [he] had no other alternative at this time but to terminate her employment." (A. 96.) According to Occhibone, Judge Motto agreed with Mancino's recommendation, believing "that Mr. Mancino took all measures to help Ms. Haybarger retain employment and that unfortunately . . . termination was necessary." (A. 98.) Accordingly, Mancino wrote in his summary to Human Resources that Judge Motto "permitted [him] to terminate her." (A. 96.)

Mancino, Occhibone, and Judge Motto informed Haybarger of her termination at a meeting in the courthouse on October 4, 2004. Additionally, Mancino wrote Haybarger's termination letter on the same date, stating that "[u]pon final review of your probationary period, I feel that

3

no progress or [sic] has been made by you, further, that you are incapable of performing at the level necessary to complete your assigned duties as the Office Manager in my office." (A. 99.)  He further stated that "[a]fter conferring with the District Court Administrator, Michael Occhibone, and the President Judge, Dominick Motto, we are in agreement that your termination . . . is necessary and in the best interest of the overall operations of the Adult Probation Office."  (A. 99.)

Haybarger sued Lawrence County Probation, the County of Lawrence, and Mancino under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*, the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Const. Stat. § 951, the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and the FMLA.  On March 14, 2007, the District Court dismissed all of Haybarger's claims against the County of Lawrence; Haybarger's ADA, FMLA, and PHRA claims against Lawrence County Probation; Haybarger's FMLA claims against Mancino in his official capacity; and Haybarger's ADA claim against Mancino in both his individual and official capacities.  There thus remained pending the Rehabilitation Act claim against Lawrence County Probation and the FMLA and PHRA claims against Mancino in his individual capacity.

After limited discovery, Lawrence County Probation moved for summary judgment based on the Eleventh Amendment.  The District Court denied Lawrence County Probation's motion for summary judgment, and we affirmed. *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole,* 551 F.3d 193, 203 (3d Cir. 2008).

On remand, Lawrence County Probation moved for summary judgment on Haybarger's Rehabilitation Act claim, and Mancino moved for summary judgment on Haybarger's FMLA claim.[1]  The District Court denied summary judgment on Haybarger's Rehabilitation Act claim, and Lawrence County Probation and Haybarger subsequently settled the Rehabilitation Act claim.

---

[1] Haybarger conceded that she cannot present a viable PHRA claim against Mancino.

4

As to the FMLA claim against Mancino in his individual capacity, the District Court held that, while the FMLA permits individual liability against supervisors at public agencies, Haybarger failed to present sufficient evidence to hold Mancino liable. The District Court reasoned that an individual supervisor is an "employer" for FMLA purposes only if he or she has "sufficient control over the [employee's] conditions and terms of employment." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, No. 06-862, 2010 U.S. Dist. LEXIS 70421, at *27 (W.D. Pa. July 13, 2010) (quoting *Kilvitis v. Cnty. of Luzerne*, 52 F. Supp. 2d 403, 413 (M.D. Pa. 1999)). The District Court then stated that an employer has adequate control if he or she "has the authority to hire and fire." *Id.* (quoting *Narodetsky v. Cardone Indus.*, No. 09-4734, 2010 U.S. Dist. LEXIS 16133, at *7 (E.D. Pa. Feb. 24, 2010)). Because Mancino lacked final authority to fire Haybarger, the District Court concluded that Mancino did not have sufficient control over Haybarger's employment for liability to attach and granted Mancino's motion for summary judgment. Haybarger filed her instant appeal, contending that a genuine dispute of material fact remains concerning whether Mancino was her employer under the FMLA.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.[2] We

---

[2] We have jurisdiction to consider only final orders under 28 U.S.C. § 1291. Except in limited circumstances, we "will not entertain an appeal unless the district court's order 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Bethel v. McAllister Bros.*, 81 F.3d 376, 381 (3d Cir. 1996) (quoting *Digital Equip. Corp. v. Desktop Direct*, 511 U.S. 863, 867 (1994)) (citations omitted). A district court order dismissing without prejudice is usually not a final order. *See Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d Cir. 1976) (per curiam). The District Court entered summary judgment in favor of Mancino on Haybarger's FMLA claim on July 14, 2010. Still pending at that time was Haybarger's Rehabilitation Act claim against Lawrence County Probation.

exercise plenary review over district court decisions granting summary judgment. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). Summary judgment is appropriate when the movant demonstrates that there is no "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A material fact is "[a] fact[] that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 248-49 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

III.

Although Haybarger challenges only the District Court's holding that Mancino was not her employer under the FMLA, and Mancino concedes in his brief that supervisors at public agencies are subject to liability under the FMLA, we have not yet decided whether supervisors at public agencies are subject to liability under the FMLA. Because we necessarily must decide whether supervisors at public agencies are subject to liability before determining whether the District Court erred in holding that Mancino was not Haybarger's employer, we first address whether the FMLA permits individual liability against supervisors at public agencies.[3] We then consider whether the District Court erred

---

After being notified of the settlement of the Rehabilitation Act claim against Lawrence County Probation, the District Court entered an order dismissing the action without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Because the District Court dismissed without prejudice, we originally lacked jurisdiction. However, the District Court amended its order on November 1, 2011, directing dismissal with prejudice. Accordingly, we now have jurisdiction. *See Cape May Greene, Inc. v. Warren*, 698 F.2d 179, 185 (3d Cir. 1983) (a non-final order that becomes final before disposition on the merits by the Court of Appeals confers jurisdiction).

[3] We ordinarily do not address issues that the parties have not briefed. *See Tenafly Eruv Ass'n v. Borough of*

6

in holding that Mancino was not an employer under the FMLA.

## A.

We look first to the FMLA's language to ascertain whether Congress intended to permit individual liability under the FMLA. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 28 (1991) (analyzing congressional intent to hold that 42 U.S.C. § 1983 permits suits against officers in their personal capacity). The FMLA defines an "employer" as follows:

> (A) In general. The term "employer"--
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or

---

*Tenafly*, 309 F.3d 144, 158 n.15 (3d Cir. 2002) (citing *Kirschbaum v. WRGSB Assocs.*, 243 F.3d 145, 151 n.1 (3d Cir. 2001)). However, we "retain[] the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991) (citing *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990)). We thus "may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before [us], even an issue the parties fail[ed] to identify and brief." *U.S. Nat'l Bank v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 447 (1993) (quoting *Arcadia*, 498 U.S. at 77); *see also Orloff v. Willoughby*, 345 U.S. 83, 87 (1953) (federal courts are "not bound to accept [a party's] concession"). The Supreme Court has cautioned that "[t]he contrary conclusion would permit litigants, by agreeing on the legal issue presented, to extract the opinion of a court . . . that would be difficult to characterize as anything but advisory." *U.S. Nat'l Bank*, 508 U.S. at 447. Because we have not yet decided whether individual liability against a supervisor at a public agency is available under the FMLA, we risk rendering an advisory opinion if we address whether Mancino is an employer under the FMLA without first analyzing whether the FMLA permits individual liability. Accordingly, we first determine whether the FMLA permits individual liability in the public agency context.

more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
(ii) includes--
(I) *any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer*; and
(II) any successor in interest of an employer;
(iii) includes *any "public agency"*, as defined in section 3(x) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(x)); and
(iv) includes the General Accounting Office [Government Accountability Office] and the Library of Congress.

29 U.S.C. § 2611(4)(A)(i)-(iv) (emphasis added).

Section 2611(4)(A)(ii)(I)'s inclusion of "any person who acts, directly or indirectly, in the interest of an employer" plainly contemplates that liability for FMLA violations may be imposed upon an individual person who would not otherwise be regarded as the plaintiff's "employer." Indeed, otherwise, § 2611(4)(A)(ii)(I) adds nothing to § 2611(4)(A)(i)'s definition of an employer as "any person . . . who employs 50 or more employees." *See Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) (holding that § 2611(4)(A)(ii)(I) "plainly includes persons other than the employer itself").

The Department of Labor's implementing regulations for the FMLA confirm that the FMLA permits individual liability. The regulations state that "[e]mployers . . . include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency." 29 C.F.R. § 825.104(a). The regulations

8

then explicitly provide that "individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA." 29 C.F.R. § 825.104(d). In promulgating the regulations, the Department of Labor responded to concerns of imposing individual liability under the FMLA by noting that the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, which defines "employer" similarly to the FMLA, already holds "corporate officers, managers and supervisors acting in the interest of an employer . . . individually liable."[4] Summary of Major Comments for the FMLA Regulations, 60 Fed. Reg. 2180, 2181 (Jan. 6, 1995) (citations omitted). Accordingly, the FMLA regulations leave little doubt that individual liability is available under the FMLA.[5]

As recognized in *Modica v. Taylor*, "that Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA means that decisions interpreting the FLSA offer the best guidance for construing the term 'employer' as it is used in the FMLA." 465 F.3d 174, 186 (5th Cir. 2006) (quoting *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999)). We held under the FLSA that a real estate management company acting as agent for various building owners is an "employer" of persons whose wages were paid by the owners. *Hodgson v. Arnheim & Neely, Inc.*, 444 F.2d 609, 611 (3d Cir. 1971), *rev'd on other grounds*, 410 U.S. 512 (1973). In *Hodgson v. Arnheim & Neely, Inc.*, a real estate management company

---

[4] Much as under the FMLA, the FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d).

[5] Congress vested the Secretary of Labor with authority to promulgate regulations to implement the FMLA under 29 U.S.C. § 2654. *See Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 n.2 (3d Cir. 2006). We give "controlling weight" to the Secretary of Labor's regulations under the FMLA "unless [the regulations] are arbitrary, capricious, or manifestly contrary to the statute." *Id.* (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

operated eight office buildings and one apartment complex under a management contract. *Id.* at 610. The management company collected rent for each building and deposited the collections in a separate bank account for each building. *Id.* The expenses for each building were paid from the bank account established for that building. *Id.* The real estate management company had the authority to hire and to supervise each building's maintenance employees. *Id.* Although the real estate management company exercised substantial control over employment practices, it lacked complete authority because the building owners maintained the right to review hiring practices. *Id.* at 611. We held that, despite the building owners' right to review employment practices, the real estate management company was an employer under the FLSA because it "act[ed] . . . in the interest of an employer." *Id.* at 612 (citations omitted). We noted that the FLSA "contemplates the possibility of several simultaneous 'employers[,]' any one of which may be liable as an employer under the Act." *Id.* at 611-12.

Much as a real estate management company acts as an agent for building owners, supervisors act as agents for their employers. Although a supervisor may not have ultimate authority over employment practices, we held in *Hodgson* that a higher decisionmaker's ultimate authority does not relieve lower decisionmakers from liability. Accordingly, we recognize today that, just as a real estate management company acting as an agent for building owners may be liable as an employer under the FLSA, an individual supervisor working for an employer may be liable as an employer under the FMLA.[6]

_____

[6] Several district courts have concluded that the FMLA does not allow individual liability by comparing the FMLA to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, instead of to the FLSA. *See, e.g.*, *Frizzell v. Sw. Motor Freight*, 906 F. Supp. 441, 449 (E.D. Tenn. 1995), *aff'd in part, rev'd in part on other grounds*, 154 F.3d 641 (6th Cir. 1998); *Carter v. Rental Unif. Serv.*, 977 F. Supp. 753, 759 (W.D. Va. 1997). Title VII defines an "employer" as "a person engaged in an industry affecting commerce . . . and any agent of such a person." 42 U.S.C. § 2000e(b). Title VII's definition of an employer is much narrower than the

10

Furthermore, we discern no reason to distinguish between public agencies and private employers under the FMLA insofar as individual liability is concerned. Under § 2611(4)(A)(iii), an employer includes "any 'public agency.'" As we discussed *supra*, the FMLA's regulations provide that "[e]mployers . . . include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency." 29 C.F.R. § 825.104(a). The Fifth and Eighth Circuits have already recognized that the FMLA's inclusion of public agencies in both its statutory language and its regulations demonstrates that individual supervisors at public agencies are subject to liability. *See Modica*, 465 F.3d at 184; *Darby*, 287 F.3d at 681. District courts within our own circuit have reached the same conclusion. *See, e.g.*, *Kilvitis*, 52 F. Supp. 2d at 415; *Hewett v. Willingboro Bd. of Educ.*, 421 F. Supp. 2d 814, 818 (D.N.J. 2006); *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 477 (W.D. Pa. 2008).

The Sixth and Eleventh Circuits, however, do not permit individual liability against supervisors at public agencies. *See Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003); *Wascura*, 169 F.3d at 686. The Sixth Circuit reasons that the FMLA does not permit individual liability because the FMLA's individual liability provision does not refer to the FMLA's public agency provision. *See Mitchell*, 343 F.3d at 829. The Sixth Circuit construes the FMLA as containing four modifiers of the meaning of "employer" in § 2611(4)(A)(i)-(iv). *Id.* at 829. According to the Sixth Circuit, the modifiers in § 2611(4)(A)(i)-(iv) each relate to the term "employer," but they do not relate to each other because "the plain text[] separat[es] . . . the clauses into distinct provisions." *Id.* at 830. The second modifier provides that "[a]n employer includes any person who acts directly or indirectly in the interest of an employer," while the

FMLA's and the FLSA's definition of an employer as any person acting "directly or indirectly, in the interest of an employer" in relation to an employee. Because Title VII defines an employer more narrowly than the FMLA and the FLSA, decisions construing Title VII do not provide a persuasive source of authority.

11

third modifier provides that "[a]n employer includes any 'public agency' as that term is defined in the FLSA." *Id.* at 829 (citing § 2611(4)(A)(ii)-(iii)). Because the Sixth Circuit does not believe that the individual liability provision in the second modifier relates to the public agency provision in the third modifier, the Sixth Circuit holds that individual liability is not available against supervisors at public agencies. *Id.* at 830.

The Sixth Circuit indicates that interpreting the modifiers as relating to each other results in redundancies, noting most importantly that § 2611(4)(B) states that "a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce." *Id.* at 831. It reasons that § 2611(4)(B) is superfluous if the first modifier in § 2611(4)(A)(i), defining an employer as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees," relates to the third modifier in § 2611(4)(A)(iii), stating that employers include public agencies. *Id.* Further, the Sixth Circuit adds that the FMLA's regulations provide that a public agency is exempt from § 2611(4)(A)(i)'s "50 or more employees" requirement, demonstrating that the first modifier in § 2611(4)(A)(i) does not relate to the third modifier in § 2611(4)(A)(iii). *Id.*

Finally, the Sixth Circuit reasons that combining § 2611(4)(A)(ii)(I)'s individual liability provision with § 2611(4)(A)(iii)'s public agency provision results in a definition of "employer" that is nearly the same as the FLSA's definition of "employer." *Id.* Because the FMLA ordinarily refers to the FLSA when it adopts a definition found in the FLSA, the Sixth Circuit holds that it is unlikely that Congress intended to create the same definition of an "employer" in the FMLA as in the FLSA. *Id.* Accordingly, the Sixth Circuit concludes that the FMLA distinguishes between public agencies and private employers and does not make individuals at public agencies liable for FMLA violations.[7] *Id.* at 832.

---

[7] The Eleventh Circuit holds that a public official sued in his or her individual capacity is not liable under the FMLA because an individual officer lacks sufficient control over an

Although the Sixth Circuit highlights several ambiguities in the FMLA, we agree with the Fifth Circuit's analysis in *Modica*. *See* 465 F.3d at 184-85. First, as the Fifth Circuit observes, the FMLA indicates a relationship between § 2611(4)(A)'s modifiers by stating that the term "employer" "means" its definition in § 2611(4)(A)(i) and then "includes" the provisions in § 2611(4)(A)(ii)-(iv). *Id.* at 185. Therefore, an "employer" "means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees" and "includes" both "any person who acts, directly or indirectly, in the interest of an employer" and public agencies. *Id.* Because the definition of "employer" includes public agencies, and Congress provided that an employer may include individuals, it plainly follows that an individual supervisor at a public agency may be subject to liability. *Id.*

Next, as the Fifth Circuit notes, § 2611(4)(B)'s "public agency" provision is not superfluous when we interpret § 2611(4)(A)(iii)'s inclusion of public agencies as relating to § 2611(4)(A)(i)'s definition of an employer because § 2611(4)(B) creates a presumption that public agencies engage in commerce. *See Modica*, 465 F.3d at 186. Section 2611(4)(B) thus "relieves plaintiffs of the burden of proving that a public agency is engaged in commerce." *Id.* (citing *Hewett*, 421 F. Supp. 2d at 820).

Finally, we agree with the Fifth Circuit's reasoning that the FMLA's similarity to the FLSA indicates that Congress intended for courts to treat the FMLA the same as the FLSA, rather than treating only specific provisions alike. *See id.* Because the FLSA explicitly provides that an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and

_____

employee's employment. *See Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999). Although we agree that an officer must have control over the terms and conditions of an employee's employment to be liable under the FMLA, we reject a blanket rule that a public official in his or her individual capacity never has the requisite control to be an employer, as we explain in Section III(B) *infra*.

includes a public agency," we agree that the FMLA similarly permits individual liability against supervisors at public agencies. *Id.* (quoting 29 U.S.C. § 203(d)).

B.

Having concluded that an individual supervisor at a public agency may be held liable under the FMLA, we must next determine whether there exists a genuine dispute of material fact concerning whether Mancino was Haybarger's employer under the FMLA. We return to the FMLA's statutory language, which states that an "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." § 2611(4)(A)(ii)(I). We believe this language means that an individual is subject to FMLA liability when he or she exercises "supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation" while acting in the employer's interest. *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987) (discussing individual liability under the FLSA's analogous definition of an "employer"). As the Fifth Circuit explained in interpreting the FLSA's analogous employer provision, an individual supervisor has adequate authority over the complaining employee when the supervisor "independently exercise[s] control over the work situation." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (quoting *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 195 (5th Cir. 1983)); *see also Falk v. Brennan*, 414 U.S. 190, 195 (1973) (holding that a company exercising "substantial control of the terms and conditions of the work" of the employees is an employer under the FLSA).

In analyzing an individual supervisor's control over the employee under the FLSA and the FMLA, most courts look to the "economic reality" of the employment situation, examining whether the individual supervisor carried out the functions of an employer with respect to the employee.[8] *See,*

---

[8] The "economic reality" test is a broad test for determining whether an employment relationship exists, and is not limited to evaluating whether a supervisor is an employer for purposes of individual liability. In 1944, the

14

*e.g.*, *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983) (analyzing the economic reality to determine whether an individual is subject to liability under the FLSA); *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999) (same); *Donovan*, 747 F.2d at 972 (same); *Dep't of Labor v. Cole Enters.*, 62 F.3d 775, 778 (6th Cir. 1995) (same); *Mason v. Mass. Dep't of Envtl. Prot.*, 774 F. Supp. 2d 349, 367 (D. Mass. 2011) (discussing economic reality in the context of individual liability under the FMLA); *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 475-76 (S.D.N.Y. 2011) (applying the economic reality test to determine whether an individual is liable under the FMLA). As we recognized in applying the economic reality test in the context of the FLSA, whether a person functions as an employer depends on the totality of the circumstances rather than on "technical concepts of the employment relationship." *Hodgson*, 444 F.2d at 612.

The Second Circuit held that some of the relevant factors in ascertaining the economic reality of the employment situation include whether the individual "(1) had the power to hire and fire the employee[], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman*, 172 F.3d

Supreme Court first looked to the "underlying economic facts" to distinguish between employees and independent contractors under the National Labor Relations Act. *NLRB v. Hearst Publ'ns, Inc.*, 322 U.S. 111, 129 (1944) (citing *NLRB v. Blount*, 131 F.2d 585 (8th Cir. 1942)). Seventeen years later, the Supreme Court looked to the "economic reality" of the employment relationship to hold that members of a work cooperative qualified as employees under the FLSA. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (quoting *United States v. Silk*, 331 U.S. 704, 713 (1947)) (additional citation omitted). Since then, we and other circuits have applied the economic reality test to decide whether entities qualify as employers under the FLSA. *See, e.g.*, *Hodgson*, 444 F.2d at 612; *Baystate Alt. Staffing v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983).

at 139 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)) (citation omitted). The Second Circuit cautioned, however, that courts must consider "any relevant evidence" and "[n]o one of the four factors standing alone is dispositive."[9] *Id.* (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

Considering Mancino's control over Haybarger's employment and the economic reality of Haybarger's employment situation, we believe that Mancino has failed to demonstrate that "there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Stated otherwise, we believe a rational juror could find that Mancino had sufficient control over Haybarger's employment so as to be subject to liability for a violation of the FMLA that he caused to occur.

As an initial matter, there appears to be no dispute that Mancino acted in the interest of Lawrence County Probation with respect to Haybarger when he carried out his role as her supervisor and recommended that Judge Motto terminate her. Indeed, Mancino stated in Haybarger's termination letter that he was dismissing her because he believed that her dismissal was "in the best interest of the [Lawrence County Probation] overall operations." (A. 99.)

Turning to Mancino's control over Haybarger's work situation, Mancino exercised substantial authority over Haybarger's termination decision, even if he lacked final authority to dismiss her. Most importantly, Mancino admits that he advised Judge Motto to terminate her. Additionally,

---

[9] The District Court recognized that Mancino's control over Haybarger's employment was critical in determining whether he qualified as an employer under the FMLA. However, rather than considering the total employment situation, the District Court considered only Mancino's "power to hire and fire." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, No. 06-862, 2010 U.S. Dist. LEXIS 70421, at *27 (W.D. Pa. July 13, 2010) (quoting *Narodetsky v. Cardone Indus.*, No. 09-4734, 2010 U.S. Dist. LEXIS 16133, at *7 (E.D. Pa. Feb. 24, 2010)). We do not agree that power to hire and fire is dispositive.

16

Mancino was present at the meeting when Haybarger was informed of her termination, and he wrote her termination letter, in which he stated, "I feel that no progress or [sic] has been made by you . . . [so] [a]fter conferring with the District Court Administrator, Michael Occhibone, and the President Judge, Dominick Motto, we are in agreement that your termination . . . is necessary." (A. 99.) As the Second Circuit noted, the fact that an employer's "hiring decisions occasionally may be subjected to a third party's veto" does not preclude imposing liability on the employer. *Carter*, 735 F.2d at 12. Accordingly, a jury could reasonably conclude that, but for the substantial authority wielded by Mancino, Judge Motto would not have exercised his ultimate authority to fire Haybarger.

Additionally, Mancino exercised significant control over the conditions of Haybarger's employment prior to her termination, even if he did not exercise control over every aspect. *See Herman*, 172 F.3d at 139 (an individual need not engage in "continuous monitoring" for liability to attach). Mancino supervised Haybarger's work, including the preparation of her annual performance reviews. Further, Mancino disciplined Haybarger when he was dissatisfied with her performance, including by issuing a formal discipline letter in March 2004. Indeed, Mancino concedes that he had ultimate authority to discipline Haybarger, requiring no approval from his supervisor. Accordingly, because the record suggests that Mancino exercised control over the conditions of Haybarger's employment, it cannot be concluded that no rational jury could find that Mancino qualified as Haybarger's employer under the FMLA. We therefore do not agree that Mancino is entitled to summary judgment.

IV.

For the foregoing reasons, we will vacate the District Court's grant of summary judgment on Haybarger's FMLA claim against William Mancino and remand for further proceedings.

17