**Laurel EDELMAN, Plaintiff,**

**v.**

**SOURCE HEALTHCARE ANALYTICS, LLC, et al., Defendants.**

**CIVIL ACTION NO. 16–6280**

United States District Court, E.D. Pennsylvania.

Signed July 18, 2017

David Lee Black, George B. Randolph, Riley Riper Hollin & Colagreco, Exton, PA, for Plaintiff.

Jonathan M. Korn, Blank Rome LLP, Princeton, NJ, Stephanie Gantman Kaplan, Jacobs Law Group PC, Philadelphia, PA, for Defendant.

## MEMORANDUM

### EDUARDO C. ROBRENO, J.

Plaintiff Laurel Edelman ("Plaintiff") brings this action against Defendants Source Healthcare Analytics, LLC ("SHA"), her former employer, and Connie Shaffer, SHA's Senior Director of Human Resources (together, "Defendants"), alleging that they (1) wrongfully terminated Plaintiff's employment following her knee surgery in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 (Counts I and II); and (2) failed to pay Plaintiff all wages due under Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. § 260.1 (Count III).

After the Court granted Defendants' first motion to dismiss Counts I and III as to both Defendants and Count II as to Shaffer, Plaintiff filed an Amended Complaint. Defendants now move to dismiss Counts I and II as to Shaffer, and Count III as to both Defendants, on the basis that Plaintiff fails to state a claim. Plaintiff opposes the motion.

For the reasons that follow, the Court will deny Defendants' motion to dismiss Plaintiff's Amended Complaint.

## I. FACTUAL BACKGROUND

Plaintiff alleges the following facts, all of which are presumed to be true for the purposes of resolving this motion.

Plaintiff was employed by SHA as a National Account Director from December 2014 through February 11, 2016. Am. Compl. ¶ 7, ECF No. 19. During her employment, Plaintiff was responsible for various accounts, including federal government contracts. Id. ¶ 9. In July and August 2015, Plaintiff advised senior executives of SHA that she believed SHA was not in compliance with various obligations under those federal government contracts and federal law, including the Health Insurance Portability and Accountability Act ("HIPAA"). Id. ¶¶ 10–11.

In October 2015, Plaintiff learned that she would need double knee replacement surgery. Id. ¶¶ 12–13. In mid-October, Plaintiff contacted Shaffer, SHA's Senior Director of Human Resources, and informed her that Plaintiff's surgery was scheduled for November 9, 2015. Id. ¶ 13. Shaffer confirmed that Plaintiff's leave time would include short-term disability leave and FMLA leave. Id. Defendants also requested that Plaintiff complete and return short-term disability and FMLA medical forms. Id. ¶ 14. Plaintiff and her physician completed and returned those forms to Defendants. Id. SHA approved and permitted the issuance of Plaintiff's short-term disability benefits as part of her FMLA leave.[1] Id.

On November 9, 2015, Plaintiff had her scheduled knee replacement surgery. Id. ¶ 15. On January 5, 2016, Plaintiff emailed her immediate supervisor, Shaffer, and SHA's human resources executive and informed them that she could return to work as of that date, so long as SHA could provide a reasonable accommodation to limit her long distance or plane travel until

---

1. Plaintiff has attached email correspondence to the Amended Complaint documenting such approval.

February 15, 2016. Id. ¶ 18. Plaintiff provided a note from her physician supporting her request for an accommodation, which is attached to the Amended Complaint. Id. Around the same time, SHA began contacting Plaintiff with various work-related requests, which Plaintiff fulfilled. Id.

Plaintiff received no substantive reply from SHA regarding her request to return to work. Id. ¶ 19. She contacted SHA again on January 21, 2016, and again on January 29, 2016, to inquire about returning to work. Id. In Plaintiff's January 29 request, she stated that she could return to work on February 1, 2016, with only minimal restrictions on her ability to travel for two weeks. Id. She again received no response. Id. Instead, Defendants advised and directed Plaintiff to take additional time off work, and return to work on February 11, 2016. Id. ¶ 21.

Following Defendants' representations and instructions, Plaintiff returned to work on February 11, 2016. Id. ¶ 22. Upon her return, Defendants immediately notified Plaintiff that her employment was terminated, effective that same day. Id. Defendants orally informed Plaintiff that, although the FMLA requires an employer to restore an employee to the same or an equivalent position following the employee's return to work from FMLA leave, Defendants could terminate Plaintiff without violating the FMLA, because Plaintiff had exceeded the twelve weeks of leave permitted under the FMLA. Id. ¶ 23. Defendants also informed Plaintiff that her position was "eliminated" because SHA was ending its involvement in the government contracting business. Id.

According to Plaintiff, Defendants' rationale for her termination—that SHA was exiting the government contracting business—was merely a pretext. Id. ¶ 23. Plaintiff alleges that at the same time that SHA terminated Plaintiff's employment,

SHA was actively recruiting prospective candidates to fill her position. Id. ¶ 24. In support of this allegation, Plaintiff has attached copies of SHA's online job posting for a National Account Director. See Am. Compl. Ex. G. With regards to Shaffer specifically, Plaintiff alleges that Shaffer is personally liable because she exerted control over Plaintiff's leave and over SHA's family medical leave policies. Id. ¶ 52. Plaintiff has attached email correspondence between her and Shaffer, illustrating that Shaffer also directed Plaintiff on the type of leave to take. See id. Ex. C.

Plaintiff also alleges that, at the time of her termination, SHA owed her various work-related business expense reimbursements, bonuses, and commissions. Id. ¶¶ 26–27. Specifically, Plaintiff alleges that, at the time of her departure from SHA, she was entitled to (1) reimbursement for business expenses; and (2) commission payments for new or renewal contracts Plaintiff secured for SHA. See id. ¶¶ 72–86. Plaintiff alleges that Defendants refused to pay Plaintiff these amounts unless and until Plaintiff executed a "Separation and Release Agreement," in which Plaintiff would waive all of her employment-related legal claims. Id. ¶ 27.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action on December 2, 2016. ECF No. 1. Plaintiff's initial complaint asserted claims against both Defendants for (1) interference in violation of the FMLA (Count I); (2) retaliation in violation of the FMLA (Count II); and (3) breach of contract and violations of the WPCL (Count III). See id. ¶¶ 30–90.

On February 8, 2017, Defendants moved to dismiss Counts I and III against both Defendants, and Count II against Shaffer. ECF No. 11. Plaintiff filed an opposition brief on February 21, 2017. ECF No. 14. On March 6, 2017, following a hearing, the

Court granted the motion, and dismissed Counts I and III against both Defendants, and Count II against Shaffer, without prejudice. ECF No. 17. The Court also granted Plaintiff leave to file an Amended Complaint. See id.

Plaintiff filed an Amended Complaint on March 17, 2017. ECF No. 19. The Amended Complaint brings claims against both Defendants for (1) interference in violation of the FMLA (Count I); (2) retaliation in violation of the FMLA (Count II); and (3) breach of contract and violations of the WPCL (Count III). See id. ¶¶ 30–90. Plaintiff seeks all unpaid wages and expense reimbursements owed, in addition to liquidated damages, interest, costs, and attorneys' fees. Id. at 22.

Defendants moved to dismiss the Amended Complaint on March 31, 2017, ECF No. 20, and Plaintiff filed an opposition brief on April 10, 2017, ECF No. 21. The Court is now ready to rule on the motion.

## III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." De-Benedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989)). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV. DISCUSSION

In their motion to dismiss, Defendants argue that (1) Plaintiff fails to state a claim against Shaffer because Plaintiff has not pleaded sufficient facts to trigger individual liability under the FMLA; and (2) Plaintiff fails to state a claim for a violation of the WPCL because Plaintiff fails to allege that she was contractually entitled to receive the expense reimbursements and bonuses that she alleges Defendants refused to pay. See Defs.' Mem., ECF No. 20.

## A. Individual Liability against Shaffer

■ First, Defendants argue that Plaintiff has not stated a claim for individual liability under the FMLA against Shaffer because Plaintiff has failed to plead that Shaffer exercised the requisite control over Plaintiff's FMLA leave to trigger individual liability. See Defs.' Mem. at 4–5.

■ Under the FMLA, an "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii). The Department of Labor's implementing regulations provide that "individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA." 29 C.F.R. § 825.104(d); see also Haybarger v. Lawrence Cty. Adult Prob. & Parole, 667 F.3d 408, 414 (3d Cir. 2012) ("[T]he FMLA regulations leave little doubt that individual liability is available under the FMLA."). Accordingly, "an individual supervisor working for an employer may be liable as an employer under the FMLA." Haybarger, 667 F.3d at 415.

■ "[A]n individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." Id. at 417 (quoting Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987)). To determine whether or not an individual is subject to FMLA liability, courts in the Third Circuit use the "economic reality" test, which "depends on the totality of the circumstances rather than 'technical concepts of the employment relationship.'" Id. at 418 (quoting Hodgson v. Arnheim & Neely, Inc., 444 F.2d 609, 612 (3d Cir. 1971)). Relevant factors include "whether the individual '(1) had the power to hire and fire the employee[ ], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Id. (alteration in original) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)). "[C]ourts must consider 'any relevant evidence,' and '[n]o one of the four factors standing alone is dispositive.'" Id. (second alteration in original) (quoting Herman, 172 F.3d at 139).

Plaintiff alleges that Shaffer is subject to individual liability because she exerted control over Plaintiff's specific leave and family medical leave policies, which are at issue in this litigation, and because Shaffer personally terminated Plaintiff. See Am. Compl. ¶ 52. Plaintiff alleges that Shaffer exerted this control by requesting and directing Plaintiff on the type of leave to take and later approving it, illustrating Shaffer's supervision over Plaintiff's "work schedul[e]" and "conditions of employment." Id. ¶¶ 56–57; see also Am. Compl. Ex. C; Haybarger, 667 F.3d at 418 (quoting Herman, 172 F.3d at 139).

In addition, Plaintiff alleges that Shaffer acted on behalf of SHA to deny Plaintiff's reinstatement and manipulated her leave in an attempt to later claim that Plaintiff exceeded her allotted FMLA leave. Am. Compl. ¶ 60. More specifically, Plaintiff alleges that Shaffer exerted control by failing to provide a timely response to Plaintiff's repeated requests to return to work from FMLA leave. Id. ¶ 47. Plaintiff claims that once Shaffer did eventually reply to her requests, she instructed Plaintiff to take more FMLA leave so that Shaffer could then claim that Plaintiff was not entitled to reinstatement under the FMLA. Id. ¶ 49.

Defendants argue that Plaintiff's allegations that Shaffer (1) exerted control over Plaintiff's leave; (2) exerted control over

SHA's medical and FMLA leave policies; and (3) personally terminated Plaintiff are insufficient to plead that Shaffer "exercised control" over Plaintiff's FMLA leave or acted on behalf of SHA. See Defs.' Mem. at 5. Defendants claim that Plaintiff's allegations lack "factual specificity" and are merely a recitation of the legal requirement that Shaffer exercise control. Id. Additionally, Defendants assert that Shaffer's administrative duties do not rise to the level of control necessary for individual liability. Id.

Plaintiff responds that the Amended Complaint contains sufficient factual allegations to allege that Shaffer is an employer subject to individual liability under the FMLA. See Pl.'s Opp'n at 2–3, ECF No. 21. Plaintiff argues that because Shaffer was designated as supervisor of Plaintiff's FMLA leave and was the only SHA executive who evaluated, approved, and administered the leave, she is an employer subject to individual liability under the FMLA. Id. at 7–8. Additionally, Plaintiff argues that Shaffer manipulated Plaintiff's employment restoration and had the power to prevent SHA from terminating Plaintiff's employment, which is enough to plausibly plead individual liability. See id.

Plaintiff's claims that Shaffer had the power to fire her and that Shaffer was the designated manager exerting control over Plaintiff's FMLA leave amount to allegations that Shaffer had supervisory authority over Plaintiff and was responsible in part for the alleged violation. See Haybarger, 667 F.3d at 418. This is sufficient to state a claim under Herman's "relevant factors" test, which this Court uses to determine individual FMLA liability. See id. (quoting Herman, 172 F.3d at 139).

First, Shaffer clearly had the power to fire Plaintiff, as Shaffer personally terminated her on the day she returned. See Am. Compl. ¶ 22. Second, Plaintiff alleges

enough facts to support the conclusion that Shaffer supervised and controlled Plaintiff's work schedule by directing her on taking leave and controlling when she could return to work. See id. ¶ 18. Though Plaintiff does not allege facts directly supporting the remaining two factors (whether Shaffer individually determined the rate and method of payment or maintained employment records, respectively), Shaffer is SHA's Senior Director of Human Resources. Therefore, it is facially plausible that Shaffer meets the requisite level of control. See Gelman, 583 F.3d at 190. Additionally, no factor is dispositive, and Plaintiff has pled enough facts to support individual liability under the economic reality test. See Perez v. Davis Design & Dev., Inc., No. 13-1118, 2013 WL 6835095, at *5 (W.D. Pa. Dec. 23, 2013) (denying motion to dismiss FMLA claims against the CEO of a company where CEO had the power to hire and fire employees and supervised employment records, but did not actively supervise or direct employment practices).

As to Count I, Plaintiff adequately pleads individual FMLA liability as to Shaffer. See Haybarger, 667 F.3d at 418 (quoting Herman, 172 F.3d at 139); see also, e.g., Shreve v. N.J. Motor Vehicle Comm'n, No. 157957, 2016 WL 5334661, at *3–4, 2016 U.S. Dist. LEXIS 129608, at *8–9 (D.N.J. Sept. 22, 2016) (denying motion to dismiss FMLA claims against an individual defendant where the plaintiff alleged that the defendant had the authority to suspend her without pay, reject her employment accommodation plan, and terminate her employment); Fleck v. WIL-MAC Corp., No. 10-5562, 2011 WL 1899198, at *13–14, 2011 U.S. Dist. LEXIS 54039, at *43-44 (E.D. Pa. May 19, 2011) (denying motion to dismiss individual liability claim where the defendant was in-

volved in the decision to terminate the plaintiff).[2]

### B. Pennsylvania Wage Payment and Collection Law Claim

Second, Defendants argue that Plaintiff has failed to state a claim for a violation of the WPCL because Plaintiff has not pleaded that she was contractually entitled to the expense reimbursement and bonuses that she alleges Defendants refused to pay. See Defs.' Mem. at 5–6.

■ The WPCL "provides a statutory remedy to employees whose former employers fail to timely pay earned compensation." Scully v. US WATS, Inc., 238 F.3d 497, 517 (3d Cir. 2001). Specifically, the WPCL provides that, "[w]henever an employer separates an employe[e] from the payroll, ... the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable." 43 Pa. Cons. Stat. § 260.5(a) (1992). Wages include "all earnings of an employe[e], regardless of whether determined on time, task, piece, commission or other method of calculation," as well as "fringe benefits or wage supplements." Id. § 260.2a. Fringe benefits or wage supplements, in turn, are defined as including "reimbursement for expenses ... and any other amount to be paid pursuant to an agreement to the employe[e], a third party or fund for the benefit of employees." Id.

"Numerous decisions have held that the WPCL does not create a new right to compensation, but rather, merely establishes a right to enforce payment of wages and compensation that the employer has legally obligated itself to pay." Scully, 238 F.3d at 516–17. As a result, "[t]he contract between the parties governs in determining whether specific wages are earned." Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990); see also Minielly v. Acme Cryogenics, Inc., No. 15-6164, 2016 WL 1221640, at *8 (E.D. Pa. Mar. 28, 2016) (granting motion to dismiss WPCL claim where the plaintiff did not allege the existence of an employment contract, because "a prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid." (quoting Scott v. Bimbo Bakeries, USA, Inc., No. 10-3154, 2012 WL 645905, at *4 (E.D. Pa. Feb. 29, 2012))).

■ The Pennsylvania Superior Court has explained that, "'[t]o present a wage-payment claim,' the employee must aver a contractual entitlement 'to compensation from wages' and a failure to pay that compensation." Braun v. Wal–Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. Ct. 2011) (quoting Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005)), aff'd, 630 Pa. 292, 106 A.3d 656 (2014). Where there is no formal written employment contract, a plaintiff bringing a WPCL claim "would have to establish, at a minimum, an implied oral contract between the employee and employer." Id. (citing De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003)).

---

**2.** This case can be distinguished from Freeman v. Philadelphia Housing Authority, No. 12–1422, 2012 WL 3235323, 2012 U.S. Dist. LEXIS 112031 (E.D. Pa. Aug. 8, 2012), where allegations that the individual defendant was the acting general counsel and signed the plaintiff's termination letter were insufficient, standing alone, to state a claim for individual FMLA liability. See id. at *8–9, 2012 U.S. Dist. LEXIS 112031 at *26–28. In Freeman, the defendant only signed the termination letter, rather than controlling the plaintiff's actual termination or making decisions regarding FMLA eligibility more generally, as Plaintiff alleges Shaffer did here.

In Pennsylvania, an implied contract exists when both parties agree on a particular obligation, but instead of being expressed in writing, it is "inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P., 132 F.Supp.3d 645, 649 (E.D. Pa. 2015). If a plaintiff plausibly alleges that there was a reasonable expectation of compensation, a court should not grant a motion to dismiss. See id. (denying a motion to dismiss where the plaintiff expected compensation for working overtime when she was instructed to do so).

In Oxner, the court found that the plaintiff plausibly alleged that her expectation was reasonable because she performed a "'useful service' for [the] [d]efendants, 'with their knowledge,' of a 'character that is usually charged for' and [the] [d]efendants expressed no dissent and availed themselves of the service." Id. (quoting Martin v. Little, Brown & Co., 304 Pa.Super. 424, 450 A.2d 984, 987 (1981)). It is a general principle of contract law in Pennsylvania that an oral agreement for employment becomes a contract only if there is an expectation of compensation. The Oxner court relied on In re Home Protection Building & Loan Ass'n, 143 Pa.Super. 96, 17 A.2d 755 (1941), in which the court ruled that the service or benefit must not be given without the expectation of payment, and the person benefiting must "do something from which his promise to pay may be fairly inferred." See id. at 757 (quoting 12 Am. Jur. Contracts § 5).

As to Count III, breach of the WPCL, Plaintiff alleges that at the time of her departure from SHA, she had entered into oral contracts with SHA, under which she was entitled to (1) reimbursement for $10,046.35 of business expenses; and (2) commission payments for new or renewal contracts Plaintiff had secured for SHA in the amount of $5,808.19. See Am. Compl. ¶¶ 72–86. Plaintiff does not assert a breach of contract claim, but rather brings this claim under a statutory remedy pursuant to the WPCL, which establishes a right to enforce compensation an employer is obliged to pay. Scully, 238 F.3d at 516–17.

### 1. Business Expenses

With respect to business expenses, Plaintiff alleges that SHA "had a pattern, practice, and policy of reimbursing the business expenses incurred by its employees (such as Plaintiff), even if those business expenses were submitted untimely." Am. Comp. ¶ 72. Plaintiff alleges that SHA had previously accepted and reimbursed Plaintiff for her business expenses through a course of dealing and in accordance with past pattern and practice. See id.

Defendants argue that this claim lacks merit because it does not state specific facts supporting a contract between Plaintiff and Defendants. See Defs.' Mem. at 6. Defendants claim that Plaintiff asserts only an unsupported legal conclusion that there was "a pattern, practice and policy of reimbursing business expenses," id. (quoting Am. Compl. ¶.72), and, moreover, she fails to assert that the alleged practice "applied to a terminated employee," id.

In response, Plaintiff argues that Defendants' position is merely a "formulaic recitation" of Twombly's pleading standards and ignores the facts alleged in the Amended Complaint. See Pl.'s Opp'n at 12. Plaintiff argues that the facts alleged in the Amended Complaint regarding an agreement and practice to reimburse Plaintiff support a claim for relief. See id.

Though Defendants claim that Plaintiff has not stated specific facts, Plaintiff alleges that she submitted documentation re-

garding her business expenses, totaling $10,046.35, by April 6, 2016. See Am. Compl. ¶ 74. Shaffer, as the authorized representative of SHA, then allegedly advised Plaintiff verbally that the business expense documentation was "in order" and SHA would reimburse Plaintiff for those expenses. Id. However, Plaintiff alleges that, one day later, Shaffer advised her that SHA would not reimburse Plaintiff for her business expenses unless she signed a release for all claims and causes of action Plaintiff had against SHA. Id. ¶ 75. This provides further support for the claim that Shaffer originally planned to reimburse Plaintiff for her business expenses, suggesting that Plaintiff had a "reasonable expectation" of compensation, and that Shaffer did "something from which h[er] promise to pay may be fairly inferred." In re Home Prot. Bldg., 17 A.2d at 757.

Therefore, the Court will deny Defendants' motion to dismiss Count III of the Amended Complaint with respect to Plaintiff's claim for expense reimbursements.

### 2. Commissions

▮ With respect to commissions, Plaintiff alleges that she is entitled, pursuant to her agreement with SHA, to $5,808.19 for contracts she secured through the second quarter of 2016. See Am. Compl. ¶¶ 84–86. In the Amended Complaint, Plaintiff lays out the terms of the oral contract and alleges that the agreement entitled her to a commission of 1.5% of the annual contract value for new sales and .75% of the annual contract value for renewal sales. See id. ¶ 79. She claims that SHA agreed to pay the base commission in quarterly installments over four quarters and attaches a commission statement illustrating amounts due to her. See id. ¶ 84; id. Ex. K. These allegations suggest that both Plaintiff and Defendants "intended to form a contract." See De As-

encio, 342 F.3d at 311 (quoting DiBonaventura v. Consolidated Rail Corp., 372 Pa.Super. 420, 539 A.2d 865, 868 (1988)).

Defendants do not dispute that Plaintiff was entitled to commission payments while she was an SHA employee; however, Defendants assert that the Incentive Compensation Plan ("ICP"), which lays out commission payments for SHA employees and governs the terms of the commission plan, is not a contract and does not entitle former employees to commissions. See Defs.' Mem. at 5–6.

In her response, Plaintiff argues that Defendants' motion to dismiss her claim for commission payments under the WPCL should be denied because Defendants' arguments are based entirely on the ICP, which Plaintiff alleges she did not execute. See Pl.'s Opp'n at 10–11 (citing Am. Compl. ¶ 78).

In the Amended Complaint, Plaintiff alleges that her commissions were paid based on an oral contract, not the ICP. See id. ¶¶ 78–86. At this stage in the litigation, Plaintiff's allegations are accepted as true and the Court will consider only the facts alleged in the complaint. See Jordan, 20 F.3d at 1261. Because Plaintiff alleges that she did not sign the ICP, that document is not relevant to the Court's consideration of whether or not Plaintiff has stated a claim for payment under the WPCL.

As to commissions, Plaintiff alleges that, pursuant to her oral agreement with SHA, SHA owed Plaintiff commission payments for the contracts she secured in August of 2015. Id. ¶ 84. As Plaintiff has pleaded sufficient facts to support the existence, terms, and breach of an oral agreement regarding her expense reimbursements and commissions, Plaintiff has stated a claim for relief under the WPCL. See CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (establish-

ing the elements required for a cause of action for a breach of contract).

Accordingly, the Court will deny Defendants' motion to dismiss Count III of the Amended Complaint with respect to Plaintiff's claim for commission payments.

## V. CONCLUSION

For the reasons stated above, the Court will deny Defendants' motion to dismiss Plaintiff's Amended Complaint.

An appropriate order follows.

## ORDER

AND NOW, this **18th** day of **July, 2017,** upon consideration of Defendants' motion to dismiss Plaintiff's Amended Complaint (ECF No. 20), and for the reasons set forth in the accompanying memorandum, it is hereby **ORDERED** that the motion is **DENIED.**

**AND IT IS SO ORDERED.**